**Gary FRIEDMANN and Lynne Steine, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ.A. 97–4645 JHR.**

United States District Court, D. New Jersey.

March 21, 2000.

Steven J. Fram, Archer & Greiner P.C., Haddonfield, NJ, for plaintiffs.

Louis J. Bizzarri, AUSA, Office of the United States Attorney, Camden, NJ, Gregory Hrebiniak, U.S. Dept. of Justice, Washington, DC, for the United States of America.

### OPINION

RODRIGUEZ, District Judge.

This matter is before the Court on the motions of defendant United States of America (the "Defendant") to (1) dismiss Count Two of the Complaint pursuant to Fed.R.Civ.P. 12(b) and 12(h)(3), and (2) for partial summary judgment on Count One of the Complaint pursuant to Fed.R.Civ.P. 56. For the reasons set forth below and expressed on the record of March 1, 2000, the Court, having considered the submis-

sions of the parties and their oral arguments, will grant (A) the Defendant's motion to dismiss Count Two, and (B) the Defendant's motion for partial summary judgment on Count One.

## I. Background.

The plaintiffs, Gary Friedmann and Lynne Stein (collectively, the "Plaintiffs"), filed their joint return for the 1987 tax year in December 1989. Pl.St.Mat. Facts ¶ 1. The return reported a Schedule A charitable deduction in the amount of $15,-690, Schedule C expense deductions for Gary Friedmann in the amount of $446,-282, and Schedule C expense deductions for Lynne Stein in the amount of $14,365. Decl. of Gary Hrebniak Ex. A. The Internal Revenue Service ("IRS") subsequently advised the Plaintiffs that it wished to audit their tax return, but this audit was never performed. Pl.St.Mat. Facts ¶ 2. On February 28, 1991, the IRS sent a Notice of Deficiency to the Plaintiffs by certified mail which the Plaintiffs did not receive. Decl. of Gary Hrebiniak Ex. B; Pl.St.Mat. Facts ¶¶ 12–14. In July 1991, the IRS assessed the Plaintiffs with a tax deficiency in the amount of $192,830, plus interest and penalties. Compl. ¶ 18. Ultimately, the Plaintiffs' 1987 tax liability came to a total of $436,958.69, which the Plaintiffs paid in January and February 1992. Compl. ¶ 18. Plaintiffs subsequently filed a timely refund claim on January 26, 1995 seeking a refund of this entire amount, plus interest. Pl.St. Material Facts ¶ 6. On page two of their Form 1040X, the Plaintiffs explained their entitlement to a refund as follows:

1. The original tax return was never audited.
A. Taxpayers believe that on Gary Friedmann's Schedule C the deductions of [$] 446,282 are proper. The audit report disallows $474,886 of deductions.
B. Taxpayers believe that on Lynne Stein's Schedule C the deductions of [$] 14,365 are proper. The audit report disallows [$]14,364 of the deductions.
C. The Taxpayers can substantiate their charitable contributions of $15,690. These deductions were disallowed . . . .

Decl. Gregory Hrebiniak Ex. D. The Plaintiffs' request for a refund was denied on September 25, 1995, and the Plaintiffs instituted this refund action by filing a two count complaint (the "Complaint") on September 24, 1997.

In Count One of the Complaint, Plaintiffs incorporate by reference the averments made in their original refund claim. Compl. ¶ 25. In Count Two, however, the Plaintiffs present a new, and arguably alternative, ground for the refund of $263,530 which the IRS had previously disallowed as a deduction on Gary Friedmann's Schedule C. Specifically, Plaintiffs propose the following:

That Gross Income (line 1A) be reduced from $410,457.00 to $146,927.00, . . . [and t]hat consultants expense of $263,530.00 (line 29), be omitted . . . . The loss after this adjustment is still $50,627.00 for the 1987 Schedule C for Gary Friedmann . . . . The removal of the $262,530.00 [sic] accurately reverses a fee that was actually recorded twice, once by Gary Friedmann personally and once by Friedmann Management Corporation. The constancy deduction of $263,530.00 attempted to properly charge Friedmann Management Corp. with this income.

Complaint ¶¶ 29–30. In July 1998, an IRS auditor, Fernando Castro, was assigned to assist the Defendant with Plaintiffs' case. Castro January 15, 1999 Dep. (hereinafter, "Castro Dep.") at 19. Mr. Castro prepared a report dated November 11, 1998 (hereinafter, the "Castro Report"), based on his review of the IRS files and other documentation provided by the Plaintiffs during discovery. Castro Dep. at 19, 24. During the discovery period, the parties attempted to reach a "consensus" on cer-

tain issues in the case. The nature and extent of their negotiations and any ensuing agreements between the parties is in dispute and unclear from the record. The Defendant filed its motion in the current matter on June 17, 1999.

This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(a).

## II. Discussion

### A. Defendant's Motion to Dismiss Count Two

The Defendant seeks dismissal of Count Two of the Complaint under Fed.R.Civ.P. 12(b) and (h)(3) because it raises new issues that were not previously set forth in the Plaintiffs' refund claim filed with the IRS. In response, the Plaintiffs concede that Count Two advances new grounds for recovery that were not identified in their refund claim. Nonetheless, they argue, this Court has jurisdiction to consider Count Two because the Defendant has waived its right to object to this variance. For the reasons set forth below, the Court will grant Defendant's motion to dismiss Count Two.

A district court has original jurisdiction to hear a suit for the refund of taxes erroneously or illegally collected. 28 U.S.C. § 1346(a)(1). Under Section 7422(a) of the Internal Revenue Code, however, the filing of a timely refund claim is a jurisdictional prerequisite to the maintenance of such an action in federal court:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (1999 Suppl.). Treasury regulations further require that a refund claim "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b) (1999). The "variance doctrine" is derived from these provisions and precludes a taxpayer from raising issues in a refund action that were not previously advanced in the taxpayer's original refund claim. *Real Estate–Land Title & Trust Co. v. United States,* 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542 (1940). *See also Bank of New York v. United States,* 526 F.2d 1012, 1019 (3d Cir.1975) (barring taxpayer from defending deductions on different grounds from those stated in administrative refund claim); *Quarty v. United States,* 170 F.3d 961, 972–73 (9th Cir.1999) (barring ex post facto claim in refund suit where not raised in refund claim); *Charter Co. v. United States,* 971 F.2d 1576, 1579 (11th Cir.1992) (precluding litigation of marketing assets claim not mentioned in taxpayer's refund claim).

The underlying purpose of the variance doctrine and these other jurisdictional prerequisites is to protect the IRS from "dilatory, careless and wasteful fiscal administration by barring incomplete or confusing claims." *Angelus Milling Co. v. C.I.R.,* 325 U.S. 293, 297, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1945). A properly supported and specific refund claim allows the IRS to investigate a taxpayer's claims, make any necessary corrections, and reach a decision on its merits without resorting to litigation. *Hefti v. Internal Revenue Service,* 8 F.3d 1169, 1173 (7th Cir.1993); *Ottawa Silica Co. v. United States,* 699 F.2d 1124, 1138 (Fed.Cir.1983). If the taxpayer's claims cannot be resolved at the administrative level, these regulations further protect the IRS by limiting the scope of litigation to those issues which it has already examined and indicated that it is willing to litigate. *Hefti,* 8 F.3d at 1173; *Ottawa Silica Co.,* 699 F.2d at 1138.

In this case, it is indisputable that the basis for refund contained in Count Two was not previously set forth in Plaintiffs' refund claim, where the Plaintiffs relied

exclusively on the contention that all of their claimed deductions were proper. Specifically, the Plaintiffs argued that the IRS improperly disallowed the Schedule A charitable deduction and the Schedule C expense deductions of Mr. Friedmann and Ms. Steine. In contrast, Count Two offers a new justification for the refund of one particular item, namely the $263,530 in consultants fees (hereinafter, the "Consultants Fees") that the IRS disallowed as an expense deduction on Mr. Friedmann's Schedule C. For the first time, Plaintiffs suggest that they made an error computing Mr. Friedmann's gross income. Specifically, the Plaintiffs "alert" the Court and the Defendant to the fact that the Consultants Fees were erroneously included in Mr. Friedmann's gross income when they should have been reported as income only to Friedmann Management Corporation. Accordingly, Plaintiffs suggest, Mr. Friedmann's gross income should be reduced by $263,530 and the Consultants Fees expense deduction eliminated from Mr. Friedmann's Schedule C.

As the foregoing illustrates, the Plaintiffs' refund claim contained no hint of the theory or facts they now advance in Count Two. Nor can the Plaintiffs argue that their earlier theory of recovery provided the IRS with adequate notice of the allegations contained in Count Two. "[A] claim for a refund based on a deduction would appear to concede that the amount in question was a part of" gross income. *Bank of New York v. United States*, 526 F.2d 1012, 1019 (3d Cir.1975). Not only is Count Two arguably inconsistent from the Plaintiffs' original refund claim, but the record shows that the Plaintiffs waited to provide the IRS with adequate documentation for both theories of recovery until the start of discovery in this litigation. In

light of these facts, this Court finds that it lacks jurisdiction to consider Count Two unless, as Plaintiffs suggest, the waiver exception applies.[1]

 The government may waive the right to object to a variance between the grounds set forth in a taxpayer's refund claim and those raised during litigation. The Supreme Court has cautioned, however, that the burden on the taxpayer to prove such a waiver is extremely heavy.

> Since, however, the tight net the Treasury Regulations fashion is for the protection of the revenue, courts should not unduly help disobedient refund claimants to slip through it. The showing should be unmistakable that the Commissioner [of the IRS] has in fact been [sic] fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission.

*Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619 (1945). Pursuant to this standard, courts will recognize a waiver only where there is convincing evidence that the IRS examined the merits of a particular claim and took action upon it. *See Goulding v. United States*, 929 F.2d 329, 333 (7th Cir. 1991), *cert. denied*, 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992) (finding waiver in light of extensive evidence government investigated merits of claim prior to denial of refund claim); *Bear Valley Mutual Water Co. v. Riddell*, 493 F.2d 948 (9th Cir.

---

**1.** Plaintiffs attempt to dismiss the substantial variance by arguing that whether the Consultants Fees are "shown as income and ... then deducted, as per Count I of the Complaint, or ... [are] not included in income in the first place, as per Count II of the Complaint, has absolutely no effect on Plaintiffs' tax liability.

The result is the same and is completely consistent with Plaintiffs' position that the IRS deficiency against them was arbitrary, erroneous and improper." Pl.Br. at 3; *see also Compl.* ¶¶ 29–31. This argument is without merit because it ignores the fundamental purpose of the variance doctrine.

1974) (rejecting waiver argument raised on appeal where government never investigated issue of loss carryovers and issue was not litigated); *Herrington v. United States,* 416 F.2d 1029, 1032–33 (10th Cir.1969) (finding no waiver in absence of evidence government considered issue not specifically set forth in refund claim); *United States v. Henderson Clay Products,* 324 F.2d 7, 17–18 (5th Cir.1963), *cert. denied,* 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964) (finding waiver where IRS affirmatively acknowledged and investigated new grounds for recovery contained in amended complaint). Thus, the mere failure of the IRS to object to a variance will not satisfy this standard. *Salyersville National Bank v. United States,* 613 F.2d 650, 652 (6th Cir.1980) (rejecting waiver argument based on IRS's failure to raise variance issue until summary judgment motion).

■ Similarly, evidence that the IRS investigated the facts surrounding a claim will not alone support a waiver. A taxpayer must show that the IRS was aware of the particular dispute at issue and deliberately investigated the underlying facts of that dispute with the purpose of deciding its merits. Where the evidence of such focus and intent on the part of the IRS is absent or inconclusive, a court should not recognize a waiver. For example, in *Angelus Milling Co.,* the corporate taxpayer argued unsuccessfully that the IRS had investigated the merits of the disputed claim for the purpose of deciding it. As evidence of this alleged waiver, the taxpayer pointed to the government's request to examine its books and to the affidavits of two accountants which confirmed the IRS's review of the books "in order to consider the claim." *Angelus Milling Co.,* 325 U.S. at 298, 65 S.Ct. at 1165. The Supreme Court found this evidence insufficient to support a waiver. There was evidence to suggest that the IRS's review of the taxpayer's books was incidental to its investigation into a related company's refund claims. In the absence of a clear indication that the IRS reviewed the taxpayer's

documents for the purpose of considering the taxpayer's particular dispute, the Court declined to find a waiver.

In this case, the Plaintiffs contend that the Defendant waived the substantial variance by reviewing the "voluminous" documentation submitted by them during discovery and reaching "a consensus on virtually all of the matters ... at issue." Friedmann Verif. ¶ 10. After a careful examination of the record, however, the Court finds insufficient evidence to support a waiver.

The Plaintiffs do not point to "unmistakable" evidence that the IRS investigated the Plaintiffs' specific claim that gross income should be recalculated to exclude the Consultants Fees and the Consultants Fees omitted as an expense from Mr. Friedmann's Schedule C. Outside of the Complaint, the only apparent reference to these allegations appears in Mr. Friedmann's May 30, 1998 summary (the "May Summary"). In the May Summary, Mr. Friedmann offers a brief explanation of what appears to be the theory now at issue in Count Two:

> The difference between the $410,457 of income reported on my tax return and the $130,567 ... of $279,890 was from consulting contracts between Friedmann Financial Co. (FFC) and Friedmann Management Corp. (FMC), and between Friedmann Investors Co. (FIC) and FMC. Both FFC and FIC contracted with FMC for services in 1987 and FMC reported the income (Note: the 1099's and 1096's cannot be located), but as in 1988, when funds were reported to FMC, ... the 1099 read Friedmann Management Corp/Gary Friedmann, and listed the TIN of FMC to avoid the appearance that Gary Friedmann was not reporting this income, in 1987 and 1988, Gary has reported this as income and attempted to issue a 1099 to FMC for the same amount so that only FC would be taxed on the amount. The profits of FMC, who only had FFC and

FIC as paying clients in 1987, were reflected in the W–2 issued to Gary Friedmann of $130,000 in 1987. Fram Verif.Ex. E. Although the preceding paragraph refers to "consulting contracts," neither the figures nor the corresponding explanation is consistent with the allegations contained in Count Two. Moreover, the mere presence of this statement in a document produced by the Plaintiffs during discovery is not enough to support a waiver:

> To the contrary, the Commissioner is required to examine only those points to which his attention is necessarily directed, and this is especially apposite here because the ... [taxpayer's] claim sets forth specific reasons in support of its ... argument the natural effect of which is to induce the Commissioner to pursue quite a different line of inquiry than is relevant to the theory upon which plaintiff presently seeks to rely ... [T]he mere availability of information is not equivalent to notice that a specific claim based thereon is being made because the Internal Revenue Service cannot be expected to discover every claim which a taxpayer might conceivably assert.

*Hempt Bros., Inc. v. United States,* 354 F.Supp. 1172, 1183 (M.D.Pa.1973.), *aff'd* 490 F.2d 1172, *cert. denied,* 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974). To demonstrate a waiver, the Plaintiffs must point to unequivocal credible evidence that the IRS focused on the particular dispute at issue in Count Two.

 ██ Although Mr. Castro acknowledges that he reviewed the May Summary, there is no evidence that he focused on and investigated the merits of the particular issues raised in Count Two. Castro Dep. at 29–30; Fram Verif. Ex. E. For example, the Castro Report continues to list the Consultants Fees as a disallowed deduction on Mr. Friedmann's Schedule C. Castro Report at 9. Similarly, the figures for total bank deposits, nontaxable deposits and gross receipts that appear in the Castro Report and are discussed by the parties during the Castro Deposition do not show that Mr. Castro considered the Plaintiffs' contentions in Count Two. *See* Castro Report at 11 (reflecting total bank deposits in the amount of $635,676, nontaxable deposits in the amount of $212,501 and gross receipts in the amount of $423,175); Castro Dep. at 27 (agreeing on total bank deposits of $602,126, nontaxable deposits of $197,954 and gross receipts of $404,-173).[2] In fact, these figures vary significantly from those proposed by the Plaintiffs in Count Two. In Count Two, the Plaintiffs indicate that gross receipts should be reduced from $410,457 to $146,-927. Yet during discovery, the parties agree to gross receipts in the amount of $404,173. The Court fails to understand, and the Plaintiffs do not explain, how a reduction in gross receipts by approximately $6,000 reflects the Plaintiffs' proposed removal of $263,530 from Mr. Friedmann's gross income.

The Plaintiffs' reliance on Mr. Friedmann's April 28, 1999 letter (the "April Letter") to Agent Castro is similarly misplaced. The April Letter, Plaintiffs allege, reveals that the parties had fully or partially resolved the majority of disputed issues, including whether various income items should be categorized as either taxable or nontaxable income. Gary Friedmann Verif. ¶¶ 10–12 and Ex. A. Yet the April Letter contains no direct or indirect reference to the Consultants Fees or to the Plaintiffs' argument that the Consultants Fees should be subtracted from Mr. Friedmann's gross income. In fact, the Consultants Fees continue to be identified as a disallowed expense on Gary Friedmann's Schedule C. Gary Friedmann Verif.Ex. A at 3. Thus, the extent to which the April Letter addresses other disputes or shows that the parties had resolved other

---

**2.** During Mr. Castro's deposition, the parties refer to the May Summary. However, they never address any of the items which relate to a recalculation of gross income to exclude the Consultants Fees. Castro Dep. at 29–40.

issues is irrelevant to the waiver issue in this case. "[I]n the absence of such explicitness the implication that formal requirements were dispensed with should not be tenuously argumentative." *Angelus Milling Co.,* 325 U.S. at 298, 65 S.Ct. at 1165. In light of the foregoing, the Court is unwilling to infer that the IRS examined the Plaintiffs' claim that the Consultants Fees were mistakenly included in gross income.

Moreover, the Court is unimpressed with the Plaintiffs' suggestion that "[t]his case cries out for application of the doctrine of waiver." Pl.Br. at 6. To the contrary, the Court finds that the variance doctrine is designed to protect the IRS from exactly the sort of actions taken by the Plaintiffs in this case. "The very point of the regulation is to promote orderly tax administration by requiring taxpayers to focus attention on the dispositive issues at the beginning of the process of administrative review, rather than requiring the Service to gradually sort out the legal basis for claims presented to it." *Bear Valley Mut. Water Co. v. Riddell,* 493 F.2d 948, 953 (9th Cir.1974). Mr. Friedmann is both a CPA and tax attorney. Therefore, it is reasonable to assume that the Plaintiffs understood and appreciated the nature of their original refund claim. It would have been a simple matter for the Plaintiffs to amend their refund claim to include the allegations in Count Two. They did not. Nor did the Plaintiffs provide the Defendant with the evidentiary support necessary to justify their refund. In fact, the record shows that as late as April 1999, on the eve of trial, the Plaintiffs continued to propose new refund theories with concomitant evidentiary support. The Court fails to see how this case "cries out" for application of the waiver exception in light of the Plaintiffs' evident inability to organize and finalize their claims ten years after the filing of their original tax return. Plaintiffs cannot avoid the consequences of their actions by claiming that, ten years after they filed their initial tax return and four and one half years after they filed

their original refund claim, they have finally given the IRS sufficient opportunity to investigate a new and entirely inconsistent refund theory. This Court declines to "unduly help disobedient refund claimants" circumvent Treasury regulations by finding a waiver in this case. *Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 297, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619 (1945). Certainly, equity does not demand it.

### B. Motion for Partial Summary Judgment on Count One

The Court now turns to the Defendant's motion for partial summary judgment on Count One as it pertains to the disallowance of the Consultants Fees expense deduction set forth on Mr. Friedmann's Schedule C. The Defendant argues that the Plaintiffs have "irrevocably repudiated the grounds for recovery" of the Consultants Fees set forth in Count One because they admit in Count Two that the Consultants Fees were never paid by Mr. Friedmann.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if a dispute over that fact "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" only if there is sufficient evidence for "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. When determining whether a genuine issue of material facts exists, a court must view all facts and make all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Ra-*

*dio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment bears the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party may satisfy this burden by showing that the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Once the moving party has demonstrated the "absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to show that a genuine issue for trial exists.

The nonmoving party is not entitled "to get to a jury on the basis of the allegations in their complaints coupled with the hope that something can be developed at trial in the way of evidence to support those allegations." *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). Fed.R.Civ.P. 56(e) provides that the party opposing summary judgment "may not rest upon the mere allegations or denials of the ... pleading ... but by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.C.P. 56(e). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contra-

dict those offered by the moving party. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2515–16. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient...." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

In deciding the motion, a court does not "weigh the evidence and determine the truth of the matter, but [instead] determine[s] whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the nonmoving party has provided evidence exceeding the "mere scintilla" threshold in demonstrating a genuine issue of material fact, a court cannot weigh the evidence and credit the moving party's interpretation of the evidence. This is so even if the moving party's evidence far outweighs that of the non-moving party. Credibility determinations are the province of the fact-finder. *Big Apple BMW, Inc. v. BMW of North America,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

In this case, the Defendant contends there is no longer a genuine issue of material fact as to whether the Consultants Fees were properly claimed as a deduction on Mr. Friedmann's Schedule C because the Plaintiffs have admitted in Count Two that the Consultants Fees were not income to Mr. Friedmann. Plaintiffs counter that Count Two is an attempt to plead in the alternative, a strategy that is allowed under Rule 8(e)(2) of the Federal Rules of Civil Procedure.[3]

■ Plaintiffs are certainly correct that Fed.R.Civ.P.Rule 8(e)(2) expressly permits alternative and inconsistent pleadings. However, contained within the paragraphs of Count Two are unequivocal averments

---

**3.** Rule 8(e)(2) provides, in pertinent part, as follows:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds....

Fed.R.Civ.P. 8(e)(2).

of fact. As such, these statements constitute judicial admissions that are conclusively binding on the Plaintiffs in this action. *Fidelity & Deposit Co. of Maryland v. Hudson United Bank*, 653 F.2d 766, 777 (3rd Cir.1981) (citations omitted). *See also Giannone v. United States Steel Corp.*, 238 F.2d 544, 547 (3d Cir.1956) ("Judicial admissions ... are admissions in pleadings, stipulations etc. which do not have to be proven in the same litigation."); *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir.2000) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact ... Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.") (quoting *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)) (internal citations omitted). Among the factual statements included in Count Two are the Plaintiffs' admissions that the Consultants Fees were neither income to, nor a business expense incurred by, Mr. Friedmann. Compl. ¶¶ 29–31 (stating that Consultants Fees were erroneously listed as both income and business expense on Gary Friedmann's Schedule C when should have been reported only on tax return of Friedmann Management Corp.).

The Court agrees with the Defendant that the factual allegations plead by the Plaintiffs in Count Two are judicial admissions. Accordingly, no genuine issue of material fact remains as to whether the Defendant properly disallowed the deduction of the Consultants Fees on Mr. Friedmann's Schedule C.[4] Defendant's motion for partial summary judgment on Count

One as it pertains to the Consultants Fees will be granted.

## III. Conclusion

For the reasons set forth above, and as expressed on the record of March 1, 2000,

(1) The Defendant's motion to dismiss Count Two of the Complaint pursuant to Fed.R.Civ.P. 12(b) and 12(h)(3) will be **GRANTED;** and

(2) The Defendant's motion for partial summary judgment on Count One of the Complaint pursuant to Fed. R.Civ.P. 56 will be **GRANTED.**

An appropriate Order will issue.

### ORDER

This matter having come before the Court on the motions of defendant United States of America (the "Defendant") to (1) dismiss Count Two of the Complaint pursuant to Fed.R.Civ.P. 12(b) and 12(h)(3), and (2) for partial summary judgment on Count One of the Complaint pursuant to Fed.R.Civ.P. 56; and

For the reasons expressed in the accompanying Opinion of even date herewith, **IT IS ORDERED** on this 21st day of March, 2000 that

(1) The Defendant's motion to dismiss Count Two of the Complaint pursuant to Fed.R.Civ.P. 12(b) and 12(h)(3) is **GRANTED;** and

(2) The Defendant's motion for partial summary judgment on Count One of the Complaint pursuant to Fed. R.Civ.P. 56 is **GRANTED.**

---

**4.** In addition, the Court notes that the Plaintiffs do not respond to the Defendant's motion for partial summary judgment on Count One by affidavit or otherwise, with specific facts or affirmative evidence showing the existence of a genuine issue for trial. Instead, the Plaintiffs rest on the conclusory allegations in their Complaint and the argument that "whether this amount is included in income and then deducted, or not included in income at all, has absolutely no bearing on the tax liability of Plaintiffs. Mr. Friedmann should be permitted to explain his reasons for characterizing the amounts at issue in the way he did." Pl.Br. at 7. Plaintiffs may not defeat summary judgment by reiterating their previous arguments, especially when the Court has already noted that the latter argument lacks merit.