## ANGELUS MILLING CO. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 610.   Argued March 7, 8, 1945.—Decided May 21, 1945.

*Mr. Prew Savoy* for petitioner.

*Mr. J. Louis Monarch,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key* and *Newton K. Fox* were on the brief, for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a suit under Title VII of the Revenue Act of 1936, 49 Stat. 1648, 1747, 7 U. S. C. § 644 *et seq.,* for a refund of processing taxes paid under the Agricultural Adjustment Act of 1933. The problem of the case derives from the procedural requirements of a claim for such a refund.

The petitioner, Angelus Milling Company, known until June, 1933 as the Middleport Flour Mills, Inc., was a processor of wheat, with its principal office in Niagara Falls, New York. During the years for which the refund is claimed—1933 to 1936—its processing operations were closely connected with those of the Niagara Falls Milling Company. The two companies had the same officers, employees, and majority stockholder, and a joint bank account. They also had a common set of books, but the respective transactions of the two companies—purchases, costs of manufacture, sales—were entered in their separate accounts on the books. Between July 9, 1933, and January 31, 1935, the companies filed joint processing tax returns. Between February 1, 1935, and November 30, 1935, Niagara filed returns in its name on behalf of itself and petitioner.

After *United States* v. *Butler*, 297 U. S. 1, invalidated the processing tax, three claims were filed with the Commissioner on June 22, 1936, all stating the name of the taxpayer and claimant as "Niagara Falls Milling Co., Inc. and/or Middleport Flour Mills, Inc." Each of these claims is for only part of the period during which the tax was paid, and their total is $434,045.27. Admittedly the form of these claims did not satisfy the requirements of the statute [1] or the authorized Treasury Regulations.[2] They

---

[1] Section 903 of Title VII of the 1936 Revenue Act, 49 Stat. 1648, 1747, requires that no refund be made or allowed "unless . . . a claim for refund has been filed . . . in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath."

[2] The applicable regulations provide for the making of claims on prescribed forms, presentation of the grounds urged, and submission of evidence, etc. Treas. Reg. 96, Arts. 201, 202, 601, 603, 605, 606. The only information furnished in these claims is the name and address of the joint claimants, and a statement of the dates and amounts of the tax payments made by the Niagara Milling Company.

were filed on an old Form 843 and not on the required Form P. T. 79. While these claims were still undetermined, Niagara, on June 30, 1937, filed a claim in the sum of $436,231.73. This claim was in due form but was filed by Niagara on its own behalf alone. Thereafter, on August 15, 1938, petitioner filed a claim, designated "Amendment to Claim," for itself alone for the refund of $145,839.12. While this claim was submitted on Form P. T. 79, it failed to give the information required by the form and the regulations, containing merely an apportionment between Angelus and Niagara of the three earlier claims. An attached affidavit stated that this claim "was originally filed on the 22nd day of June 1936 in the name of the Niagara Falls Milling Company and/or Middleport Flour Mills, Inc." The Commissioner, on May 23, 1941, denied this claim.

To review this disallowance, petitioner brought proceedings in the United States Processing Tax Board of Review. A motion to dismiss, because of a fatal defect in the claim, was denied by the Board, but the Commissioner in his answer stood on his ground that the Board was without jurisdiction to entertain the proceedings. At this stage in the litigation Congress abolished the Processing Tax Board of Review and transferred its jurisdiction to the present Tax Court. That Court granted the Commissioner's renewed motion to dismiss, 1 T. C. 1031, and the Circuit Court of Appeals for the Second Circuit affirmed. 144 F. 2d 469. We brought the case here, 323 U. S. 703, because conflict was urged with the decision in *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62.[3]

Petitioner's claim for recovering processing taxes paid by it was properly rejected by the Commissioner if it did

---

[3] After we granted certiorari in this case, the same question of timeliness as to filing of the petition emerged as is raised in *Commissioner* v. *Estate of Bedford, ante,* p. 283. The decision in the *Bedford* case governs this.

not satisfy the conditions which Congress directly and through the rule-making power given to the Treasury laid down as a prerequisite for such refund. Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of Treasury officials. *Tucker* v. *Alexander*, 275 U. S. 228, 231–232; *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, 71; *United States* v. *Garbutt Oil Co.*, 302 U. S. 528, 533. Without needless elaboration, we conclude that there is nothing in what Congress has explicitly commanded to bar the claim. The effective administration of these modern complicated revenue measures inescapably leads Congress to authorize detailed administrative regulations by the Commissioner of Internal Revenue. He may insist upon full compliance with his regulations. See *United States* v. *Memphis Cotton Oil Co., supra,* at 71; *Commissioner* v. *Lane-Wells Co.*, 321 U. S. 219, 223–224. It is hardly contended that the confusing series of petitioner's claims which we have summarized, whether singly or in conjunction, obeyed the regulations. For such default the Commissioner could have rejected the claims out of hand. He did not do that, and by what he did do he has given rise to the contention that he waived the requirement of his regulations. The basis of this claim of waiver is that the Commissioner through his agents dispensed with the formal requirements of a claim by investigating its merits.

Candor does not permit one to say that the power of the Commissioner to waive defects in claims for refund is a subject made crystal-clear by the authorities. The question has been somewhat complicated by cases involving amendments of claim. Thus, in *United States* v. *Memphis Cotton Oil Co., supra,* a claimant's amendment was allowed because filed before his original claim was rejected on formal grounds. According to what was there said, there can be no amendment after a rejection though

the Commissioner had examined the claimant's books and tentatively found an overpayment. See *Edwards* v. *Malley,* 109 F. 2d 640; 10 Mertens, Law of Federal Income Taxation (1942) § 58.19. It smacks too much of the strangling niceties of common law pleading to find no existing claim to which a curative amendment may be attached, although there has been an examination of the merits, simply because of the prior rejection of a formally defective claim and yet find waiver of a formal defect merely because an examination of the merits by the Commissioner manifests consideration of the claim.

Treasury Regulations are calculated to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims. *Tucker* v. *Alexander, supra,* at 231; *Commissioner* v. *Lane-Wells Co., supra,* at 223–224. But Congress has given the Treasury this rule-making power for self-protection and not for self-imprisonment. If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness.

Since, however, the tight net which the Treasury Regulations fashion is for the protection of the revenue, courts should not unduly help disobedient refund claimants to slip through it. The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim

that was made even though there was a departure from form in its submission. We do not think that the petitioner has made out such a case here.

The evidence of waiver largely rests upon a letter from a General Deputy Collector requesting an examination of certain books, and upon affidavits of two accountants, one an officer of the company, to the effect that the Commissioner examined petitioner's books in order to consider the claim. We agree with the Tax Court that the evidence is insufficient to establish waiver. The letter from the General Deputy Collector requesting petitioner's president to allow examination of the "records of the Middleport Flour Mills, Inc., and Angelus Flour Mills, Inc." was in connection with the claim which had been filed by the Niagara Milling Company. In view of the confusing identity of interest of the two companies, it is not unreasonable to attribute this inquiry, as did the Tax Court, to Niagara's claim and not to petitioner's. For similar reasons, the affidavits regarding the purpose of the Commissioner's representatives bear interpretation of a like significance.

In the *Memphis Cotton Oil* case, where an amendment was allowed out of time, the Deputy Commissioner, after an audit of the taxpayer's books, notified the taxpayer in writing that its refund claims had been considered and that its taxes had been readjusted in accordance with a proven overassessment. Similar evidence of preoccupation by the Commissioner with the particular claim and controversy has been offered in cases where waiver was recognized. See, *e. g., United States* v. *Elgin Watch Co.,* 66 F. 2d 344; *United States* v. *Humble Oil & Refining Co.,* 69 F. 2d 214; *Weihman* v. *United States,* 4 F. Supp. 155. To be sure, it is not essential for the establishment of a waiver that the Commissioner communicate his ruling on the merits to the taxpayer. But in the absence of such explicitness the implication that formal requirements were dispensed with should not be tenuously argu-

mentative. No more than that can be squeezed out of the materials in this record. Thus it is claimed that the Commissioner offered a refund, subject to offsets, to the Niagara Falls Milling Company. But this rather confirms the indication the Commissioner was bent on Niagara's claim. The Commissioner may have acquired knowledge of petitioner's affairs but only by the way, incidentally to his investigation of Niagara's claims. Petitioner has failed to sustain his burden of showing that the Commissioner, by examining the facts of petitioner's claim in order to determine the merits, dispensed with the exactions of the regulations.

An additional argument of the petitioner need not detain us long. It urges that taking the claims filed by Niagara and petitioner together, they furnish all the data required by the regulations. But it is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund. The protection of the revenue authorizes the Commissioner to demand information in a particular form, and he is entitled to insist that the form be observed so as to advise him expeditiously and accurately of the true nature of the claim.

*Affirmed.*

MR. JUSTICE DOUGLAS dissents.