679 F.2d 313
 82-1 USTC P 9411
 Michael D'AMELIO, Sole Surviving Executor and Residuary
Legatee of the Estate of Peter D'Amelio, and Concetta
D'Amelio, a/k/a Constance D'Amelio, Executrix and
Beneficiary of the Estate of Joseph D'Amelio, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 81-2748.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6) April 13, 1982.
Decided May 26, 1982.
 
 Jerome A. Deener, Hackensack, N. J., for appellants.
 Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard W. Perkins, Tax Division, Dept. of Justice, Washington, D. C., for appellee; William W. Robertson, U. S. Atty., Newark, N. J., of counsel.
 Before SEITZ, Chief Judge, ADAMS, Circuit Judge, and STAPLETON, District Judge.*
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 The estate of Peter D'Amelio brought this action on February 3, 1981, to recover $22,847.01 in federal income taxes which it claims were paid erroneously on December 3, 1974. The District Court dismissed the case for want of subject matter jurisdiction after finding that the estate had failed to file an administrative claim for refund within the two year period prescribed by Section 6511(a) of the Internal Revenue Code.[1] We affirm.
 
 
 2
 The relevant facts are not in dispute.[2] Peter D'Amelio died on March 28, 1958, leaving income tax deficiencies, with accrued interest, for the years 1943 through 1949, 1955, and 1956. During his lifetime and after his death, numerous payments were made in partial satisfaction of these outstanding obligations. On August 12, 1974, the government filed a Proof of Claim claiming that the estate owed $45,974.48 in income taxes and interest thereon for the tax years 1946 and 1947.
 
 
 3
 On September 24, 1974, the attorney for the estate sent a letter to the Internal Revenue Service acknowledging receipt of the August 12th Claim and stating that the estate stood "ready to make payments to the Internal Revenue Service for the entire amount of the outstanding lien." The letter went on to request "an accounting, prepared by the Internal Revenue Service, indicating charges against and credits in favor of this estate" so that the representatives of the estate could independently establish the amount of tax the estate had outstanding. The letter explained that this request was being made because payments on D'Amelio's tax obligations had been made over a twenty year period and "it has become impossible for (the current attorney) or the accountant to independently establish the amount of the outstanding lien." The September 24, 1974 letter also noted that if the estate's request for an accounting were denied, the estate would still pay the claim to "prevent the running of interest," but that such payment would be made under protest and that the estate would seek judicial intervention by means of an action in mandamus to compel the Internal Revenue Service to supply the accounting which the estate sought.
 
 
 4
 On December 3, 1974, the estate paid the amount claimed by the government. Accompanying the payment was a letter from the estate's attorney which again requested an accounting so that the representatives of the estate could establish, to their satisfaction, that the amount paid was correct.
 
 
 5
 On December 12, 1975, the estate received an accounting from the Internal Revenue Service indicating how it had allocated the payments made by the estate. By letter dated January 23, 1976, the estate requested a conference with the Service to discuss specific questions the estate had concerning the accounting.
 
 
 6
 After a fourteen month delay, a conference was scheduled for and held on March 24, 1977. After the conference, the estate compiled its own accounting. According to the estate's accounting, the Internal Revenue Service had misallocated certain payments made by the estate, thus resulting in an overpayment of taxes by the estate in the amount of $22,847.01. By letter dated August 4, 1977, the estate's attorney informed the Internal Revenue Service that the estate believed it had overpaid its taxes.
 
 II
 
 7
 Section 6511(a) requires that a taxpayer file a claim for refund within two years of the payment of the tax. The D'Amelio estate, accordingly, had until December 3, 1976 to file a claim if it wished to seek a refund. It claims that it did so when it sent its letters of September 1974, December 1974, and January 1976. We agree with the District Court, however, that these letters do not constitute a claim for refund.
 
 
 8
 Although the Internal Revenue Service provides a specific form for claiming a refund, it has long been recognized that an informal claim for refund will suffice. See, e.g., Kuehn v. United States, 480 F.2d 1319 (Ct.Cl.1973). There is, however, a minimum amount of communication which must take place. The minimum notice required was tersely described by the Court of Claims in Barenfeld v. United States, 442 F.2d 371, 374 (Ct.Cl.1971):
 
 
 9
 It is not necessary that a claim for refund or credit be submitted to the Internal Revenue Service in any particular form. If a taxpayer submits to the Internal Revenue Service some sort of written instrument which informs the administrative agency that the taxpayer believes that he has been subjected to an erroneous or illegal tax exaction, and that he desires a refund or credit because of such action, this is sufficient.
 
 
 10
 In this case, the estate's letters did not advise the government that it believed it was entitled to a refund. Each was a request for information which the estate indicated would enable it to independently determine if it had overpaid its taxes.[3] While these letters gave notice to the government that the estate might someday assert a claim for refund if the estate ultimately concluded that it was entitled to one, no notice of a decision to seek a refund was given until August 4, 1977, eight months after the statutory period had run.[4]
 
 
 11
 We also agree that there is no merit to the estate's contention that the Internal Revenue Service waived the claim filing requirement of Section 6511(a) or that it is estopped to rely upon that requirement. The Service is without authority to so dispense with an explicit Congressional mandate. Angelus Milling Co. v. Commissioner, 325 U.S. 293, 296, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1945). Contrary to the estate's suggestion, this is not a case in which the alleged waiver is of a requirement of the Internal Revenue regulations which prescribe the formality and particularity with which a refund claim must be made. Where, as here, a taxpayer gives no notice within the statutory period that a claim is being made, Section 6511(a) bars relief.
 
 III
 
 12
 The order of the District Court dismissing this action will be affirmed.
 
 
 
 *
 The Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 26 U.S.C. § 6511(a) (1976)
 
 
 [2]
 We draw our statement of facts from the complaint and various documents submitted by D'Amelio in opposition to the Government's motion "to dismiss ... or to enter summary judgment dismissing" the action. The submitted documents purport to be "the numerous letters ... advising of a refund request." Complaint P 10. We believe that the district court properly could consider these documents. See Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n.4, 91 L.Ed. 1209 (1947)
 
 
 [3]
 The District Court thus concluded:
 The most there has ever been was a request for information and notice to IRS that, depending on what the information was, there may be a claim for refund.
 (App. at S-19).
 
 
 [4]
 The attorney who wrote the three letters relied upon by the estate wrote to the government on August 4, 1977, indicating that he would file a claim to toll the running of the statutory period if the parties did not reach an agreement by December 1, 1977. It is thus apparent that the author of the earlier three letters did not understand them to be a claim for refund