T.C. Memo. 2004-129


UNITED STATES TAX COURT



MARION GOLDIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 12622-01.                    Filed May 27, 2004.



Marion Goldin, pro se.

<u>Taylor Cortright</u>, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined, inter alia, that petitioner's claim for a refund of tax paid for 1983 and 1984, based on her claim for relief from joint liability for tax under section 6015(f) for 1983 and 1984, was not timely.  Petitioner filed a petition under section 6015(e)(1) seeking review of that determination.

The sole issue for decision is whether petitioner's claim for a refund of tax paid for 1983 and 1984 was timely. We hold that it was not.[1]

Section references are to the Internal Revenue Code.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Petitioner

Petitioner resided in Washington, D.C., when she filed the petition in this case.

In 1983, petitioner was a producer for American Broadcasting Co., Inc. She earned $135,817 as a salaried employee in 1983. She was also a salaried employee in 1984. Petitioner's husband was a tax attorney. He invested in Robotics, a tax shelter, in 1983-84. Petitioner and her husband filed joint returns for 1983 and 1984 in which they reported losses and credits from Robotics. Robotics items gave rise to deficiencies for 1983 and 1984, all of which were attributable solely to petitioner's husband.

Petitioner's husband died on September 16, 1992.

---

[1]   In light of our conclusion, we need not decide whether petitioner qualifies for equitable relief from joint liability under sec. 6015(f).

B.  Respondent's Assessment of Tax for 1983 and 1984 Relating to
    Robotics, and Petitioner's Payment of Tax and Letters to
    Respondent Relating to Those Taxes

On July 24, 1995, respondent assessed tax of $7,565 and

interest of $15,126.16 for 1983, and tax of $1,996 and interest

of $3,337.78 for 1984.

On a date not stated in the record, but before July 31,

1995, petitioner received notices of amounts due of $22,691.16

for 1983 and $5,333.78 for 1984.  On July 31, 1995, petitioner

sent a letter to respondent's Appeals officer which reads as

follows:

> Thank you for being available to take my phone
> call earlier today and for your quick recall of my late
> husband, Norman Goldin, as well as that albatross:
> ROBOTICS Development Association.
>
> As I informed you, Norman died suddenly in
> September of 1992 and his death is something I have
> still not recovered from.  I knew about Robotics only
> from his brief characterizations of the problems it was
> causing and of his similarly brief descriptions of
> conversations and correspondence with you and others at
> the IRS.  It had clearly turned into a nightmare while
> he was alive; but I was comforted by the fact that he
> was handling it, had it under control and had
> apparently, prior to his death, come to a final
> settlement with the IRS on all the complex and
> convoluted issues involved.
>
> That belief was further reinforced by papers I
> received following his passing which indicated that a
> "0 corrected" balance existed.  I believe I received
> these notices in March of 1993, just six months after
> Norman's death and literally just days after my Mother
> died, also in March of 1993.  Of small comfort, but
> comfort nonetheless in the midst of all these
> tragedies, was the knowledge that at least I didn't
> have to deal with Robotics; that Norman had handled it,
> as he had handled so much else, while he was alive.

So you can imagine my horror when I opened my mail this past Friday and again on Saturday and found the enclosed "Notice(s) of Tax Due on Federal Tax Return(s)" of $5,333.78 and $22,691.16!  All I could conclude was that Robotics had once again reared its ugly head, although that is impossible for me to believe after the huge amounts we have already paid to the IRS and the state of Maryland for this investment; and after all the hours and sweat and no doubt tears that Norman Goldin spent in working with you and other members of the IRS to achieve a fair, equitable and final settlement.

As I told you in our telephone conversation: in trying to review the files last Sunday, they might as well have been written in Greek.  Deciphering them is beyond my ability.  Nor do I have any professional to turn to: no accountant or attorney handled this matter for us personally; Norman assumed sole responsibility for working out this mess.  And now that he is gone, I don't know what to do or where to turn to begin to resolve what has surely been assessed in error.

    *       *       *       *       *       *       *

I wait anxiously to hear from you and trust that we will be able to resolve this in a fair and speedy fashion.

On September 5, 1995, petitioner paid $7,565 of tax for 1983.  On September 6, 1995, petitioner paid tax of $1,996 for 1984.

On October 3, 1995, Terrance L. Kohl (Kohl), petitioner's certified public accountant, sent a letter to respondent which reads as follows:

I was just recently retained by the late Mr. Goldin's widow, Mrs. Marion F. Goldin concerning this tax matter [tax year 1983] in question.

A quick review of the situation indicates that according to IRS notice of tax deficiency dated June 30, 1995, shows $7,565; however your notice of Sept.

25, 1995, Number CP 503 shows $15,134.78. Would you please explain the difference.

It is also my understanding that Mrs. Goldin paid the actual tax billed by IRS during the first week of September 1995.

I look forward to your explanation and appreciate your assistance in clearing her file.

On December 4, 1995, respondent assessed an accuracy-related penalty for substantial valuation misstatement under section 6662(e) of $1,135 for 1983.

On January 16, 1996, in response to a notice that petitioner owed $2,284.88 in interest for 1983, petitioner wrote to respondent as follows:

> I have no idea what this is all about. No Notice 680 was enclosed. I have already been assessed & paid additional tax & penalty of almost $23,000. What else can you possibly want to extract from me & my dead husband? I am enclosing a copy of all the actions taken on this account since 1983. Surely this latest assessment is redundant & in error. Thank you.

On January 22, 1996, petitioner paid interest of $15,592.79 for 1983 and $3,517.20 for 1984.

On February 5, 1996, Kohl sent a letter (Kohl's February 5, 1996, letter) to respondent which reads as follows:

> I have discovered, after a careful and detailed review of your audit findings and billings of additional tax and interest, that the additional tax due was computed without the benefit of income averaging. This resulted in a reduction of tax in the amount of $2,970.

| | |
|---|---|
| Tax computed by IRS | $ 7,565 |
| Tax computed by Income Averaging | 4,595 |
| Tax reduction | $ 2,970 |

This consequently causes a reduction in the interest billing of approximately $5,904.

These findings create concern about the accuracy of the 1982 and 1981 tax billings.  Would you please recompute these two years considering the impact of Income Averaging.

Enclosed are the following supporting schedules:

1.   Review of Tax Year 1983
2.   Schedule G Income Averaging - 1983 recomputed
3.   Copy of IRS detailed interest calculation
        Adjusted for affect (sic) of tax reduction.
4.   Copy of Form 1040 Page 1 & 2 as originally
        filed for years 1983, 1982, 1981
5.   Review of tax year 1982, reflecting
        disallowance of Robotics and Schedule A
        Business Deductions

There appears to be some confusion about whether or not the Schedule A Business deduction disallowance was included in the tax deficiency billed.  It was included as proven by Schedule 5.

Please review the data enclosed and adjust your billings accordingly.  If I can be of any assistance in concluding this matter please do not hesitate to contact me.  Please consider the taxpayer's position, Mrs. Goldin has been widowed for the past several years and extremely flustrated (sic) by this entire mess.

C.   Petitioner's Request for Relief From Joint Liability for 1983-84

On March 15, 1999, petitioner filed a Form 8857, Request for Innocent Spouse Relief, for tax years 1981-84.  In the Form 8857, petitioner requested relief from joint liability under section 6015.  She included a request for refund of tax paid for 1983-84 relating to Robotics.

By letter dated December 3, 1999, respondent's District Director told petitioner that she was entitled to relief under

section 6015(c) for all amounts owed as of July 22, 1998, but that her request for refund was untimely.

By letter to respondent's Appeals officer dated December 19, 1999, petitioner told respondent that she disagreed with respondent's conclusion because it meant she was not entitled to a refund. On January 23, 2001, petitioner faxed copies of her July 31, 1995, letter and Kohl's October 3, 1995, letter to respondent's Appeals officer. By letter to respondent's Appeals officer dated March 1, 2001, petitioner said that she did not understand why she was not entitled to a refund. By letter to respondent's Appeals officer dated March 16, 2001, petitioner withdrew her claims under section 6015 for 1981 and 1982.

Respondent determined on July 20, 2001, that petitioner (1) is entitled to relief under section 6015(c) in the amount of tax owed as of July 22, 1998 ($5,219 for 1983 and $48 for 1984), (2) is not entitled to equitable relief under section 6015(f) for 1983 and 1984, and (3) is not entitled to a refund for 1983 and 1984 because her request for a refund was not timely. Petitioner timely filed a petition and an amended petition in which she seeks review of respondent's determination.

OPINION

A.  Petitioner's Contentions

Petitioner contends that it is inequitable to hold her jointly liable for tax she paid before July 23, 1998, that is

attributable to her deceased husband's interest in Robotics for 1983 and 1984, and that she is entitled to relief from joint liability for tax under section 6015(f).  The relief that petitioner requests is a refund of $23,157.79 for 1983 and $5,513.20 for 1984.

An informal refund claim must have a written component that gives the Commissioner sufficient notice of the fact that the taxpayer believes he or she has been erroneously subjected to tax and that a refund is sought for a certain year or years.  Angelus Milling Co. v. United States, 325 U.S. 293, 297-298 (1945); United States v. Kales, 314 U.S. 186, 193-194, 196 (1941); Disabled Am. Veterans v. United States, 227 Ct. Cl. 474, 650 F.2d 1178, 1180 (1981); Missouri Pac. R.R. Co. v. United States, 214 Ct. Cl. 623, 558 F.2d 596, 598 (1977); Barenfeld v. United States, 194 Ct. Cl. 903, 442 F.2d 371, 374-375 (1971); Am. Radiator & Standard Sanitary Corp. v. United States, 162 Ct. Cl. 106, 318 F.2d 915, 920 (1963); New England Elec. Sys. v. United States, 32 Fed. Cl. 636, 641 (1995).

B.   Whether Letters Petitioner and Kohl Sent to Respondent
     Before September 5, 1997, Constitute a Claim for Refund of
     Taxes Petitioner Paid Relating to Robotics

Petitioner contends that various letters she and Kohl sent to respondent before September 5, 1997, made clear that Robotics was her husband's investment, that she did not know anything about Robotics, that she was requesting a refund of tax paid for

1983 and 1984 attributable to Robotics, and that those letters constitute a proper claim for refund of 1983 and 1984 taxes paid relating to Robotics.

Giving petitioner the benefit of the doubt, we read petitioner's pre-September 5, 1997, letters as voicing some of the elements required for section 6015 relief. However, those letters did not and could not give respondent sufficient notice that petitioner sought a refund for 1983 and 1984 under section 6015 because those letters were sent to respondent long before section 6015 was enacted on July 22, 1998. See <u>Washington v. Commissioner</u>, 120 T.C. 137, 160-161 (2003) (the taxpayer's tax returns filed on or before April 15, 1998, could not adequately notify the Commissioner of the basis for the taxpayer's refund claim because they were filed before section 6015 was enacted); <u>Bartman v. Commissioner</u>, T.C. Memo. 2004-93.

Under former section 6013(e), repealed in 1998, Internal Revenue Service Restructuring and Reform Act of 1998 (RRA), Pub. L. 105-206, sec. 3201(a), (e)(1), 112 Stat. 734, 740, a claim in the Tax Court for relief from joint liability was an affirmative defense in a deficiency proceeding. Former section 6013(e) did not allow us to grant relief to a taxpayer, such as petitioner, who filed a "stand-alone" petition (i.e., one not related to a deficiency proceeding). See <u>Brown v. Commissioner</u>, T.C. Memo. 2002-187. Thus, we are unable to grant relief to petitioner for

1983 and 1984 under section 6013(e) because her pre-September 5, 1997, letters were not part of a deficiency case in this Court.

Respondent concedes that Kohl's February 5, 1996, letter, is a claim for an $8,874 refund for 1983 based on income averaging. Kohl's February 5, 1996, letter discussed only income averaging for 1983; it is not a claim for refund of taxes based on section 6015.

We conclude that letters petitioner and Kohl sent to respondent before September 5, 1997, do not constitute a claim for refund of taxes paid for 1983 and 1984 based on section 6015.

C.  Whether Letters Petitioner Sent to Respondent After March
    15, 1999, Were Timely Refund Claims for Taxes She Paid
    Relating to Robotics for 1983 and 1984

    1.  Time Limits for Refund Claims Under Section 6015(f)

A taxpayer may be entitled to a refund if relief is granted under section 6015(f).  Sec. 6015(g)(1).  The time limits for requesting a refund provided by section 6511 apply to refunds sought under section 6015(f).  Sec. 6015(g)(1).  We next consider whether the letters petitioner sent to respondent after March 15, 1999, constitute a timely refund claim under section 6511.

A taxpayer may obtain a refund of overpaid tax if he or she files a claim for refund within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever is later.  Sec. 6511(a).  Petitioner paid tax of $7,565 for 1983 on September 5, 1995, and $1,996 for 1984 on September 6, 1995, and

interest of $15,592.79 for 1983 and $3,517.20 for 1984 on January 22, 1996. Thus, petitioner had until September 5, 1997, to file a claim for refund of 1983 tax, until September 6, 1997, to file a claim for refund of 1984 tax, and until January 22, 1998, to file a claim for refund of interest for 1983 and 1984. Sec. 6511(a).

2. <u>Petitioner's Request for Relief Under Section 6015</u>

Section 6015 was enacted in 1998. RRA sec. 3201(a). Petitioner filed Form 8857 on March 15, 1999, in which she sought a refund of tax paid for 1983 and 1984 related to Robotics. March 15, 1999, is after the date for petitioner to timely request a refund of tax or interest for 1983 and 1984. Petitioner contends that the Form 8857 is a timely refund claim because it is an amendment to the letters petitioner and Kohl sent to respondent before September 5, 1997. We disagree.

A claim relates back to (i.e., is considered to be part of) a prior, timely request if the taxpayer raises no new grounds for relief in the later claim. <u>United States v. Andrews</u>, 302 U.S. 517, 524 (1938). The only ground for refund stated in Kohl's February 5, 1996, letter is income averaging for 1983. As discussed above at paragraph B, petitioner's and Kohl's pre-September 5, 1997, letters did not adequately notify respondent that the basis of petitioner's claim for refund for 1983 and 1984 was section 6015, or raise a cognizable claim for refund under former section 6013(e). Thus, petitioner's post-September 5,

1997, refund claim based on section 6015(f) does not relate back to petitioner's and Kohl's pre-September 5, 1997, letters.

Our conclusion is consistent with the conclusion of a District Court which held that an untimely tax refund claim under section 6511(a) for relief from joint liability under section 6015 did not relate back to a timely refund claim for a capital loss deduction. Choate v. United States, 218 F.R.D. 677 (S.D. Cal. 2003). The taxpayer in Choate filed joint returns for 1988 and 1989. Taxes for those years were paid in full on May 13, 1998. On January 22, 1999, the taxpayer filed a refund claim for 1989 based on a capital loss. The Commissioner allowed the claim. On January 30, 2001, the taxpayer sought an additional refund by filing a claim for relief from joint liability under section 6015 for 1989. The Commissioner disallowed the additional refund claim because it was not timely filed under section 6511(a). The District Court said that the later claim was not an amendment to the original claim because it would have required examination of matters not germane to the original claim. Id. at 680. The District Court held that it lacked jurisdiction over the taxpayer's claim for relief. Id.

Petitioner contends that the holding in Choate that the claimed amendment to the taxpayer's refund claim was untimely does not apply here because of the following differences between this case and Choate: (a) The taxpayer in Choate actually

received a refund, but she has not; (b) the taxpayer in Choate was not granted relief under section 6015(c), but she was; (c) jurisdiction was at issue in Choate but not here; (d) the taxpayer in Choate argued that his refund claim for section 6015 relief was an amendment to a prior claim, but petitioner does not so contend; (e) the taxpayer and his spouse in Choate were divorced whereas petitioner was widowed; and (f) the taxpayer in Choate tried to mix business activities of his former wife with unrelated capital losses on real estate whereas petitioner's sole issue and reason for her refund claim is that her husband was solely responsible for the tax.  We disagree that any of these differences causes petitioner's refund claim under section 6015(f) to relate back to Kohl's February 5, 1996, letter or the other letters sent before September 5, 1997, discussed above. See United States v. Andrews, supra.

Petitioner wrote to respondent on December 19, 1999, and March 1, 2001, to appeal the denial of her request for refund under section 6015(f).  These letters are no more a timely refund claim than was petitioner's request for relief under section 6015(f).

Petitioner relies on Washington v. Commissioner, 120 T.C. at 162.  The taxpayer in Washington wrote a letter to a revenue officer on July 15, 1998, stating that the 1989 tax liability was attributable to her former husband and that garnishment of her wages would cause her financial hardship, and requesting that her

account be placed in an "uncollectible status" and that penalties and interest assessed against her be abated. Id. at 141. The taxpayer wrote another letter to the revenue agent on March 13, 1999, stating that she was current with her filing obligations and that garnishment of her wages would cause serious financial hardship and asking that she be relieved of the 1989 tax liability. Id. at 141-142, 162. We treated the July 15, 1998, and March 13, 1999, letters as a request for relief under section 6015 because of the ongoing nature of the taxpayer's request and the closeness in time of the July 15, 1998, letter to the July 22, 1998, enactment date of section 6015. Id. Thus, we held that the taxpayer was entitled to a refund of those payments of tax applied to the 1989 liability within 2 years of her refund request. Id. at 163.

Petitioner contends that her request for relief under section 6015 is timely under Washington. We disagree. Unlike the taxpayer in Washington, petitioner did not make a timely request for a refund under section 6015(f). We conclude that Washington is distinguishable and does not control this case.

D. Whether Time Limits Provided in Section 6511 Apply in This Case

Petitioner points out that the time for her to request a refund under section 6511 had expired before section 6015(f) was enacted. On the basis of this fact, petitioner contends that the time limits provided in section 6511 should not apply in this

case.  We disagree.  Relief provisions typically include an effective date before which relief is not available.  See, e.g., Thurner v. Commissioner, 121 T.C. 43, 49 (2003); Washington v. Commissioner, supra at 159-160 (Congress set a cutoff date for claims for relief under section 6015); Miller v. Commissioner, 115 T.C. 582, 587-588 (2000), affd. 21 Fed. Appx. 160 (4th Cir. 2001).  The time limits under section 6511 apply to requests for refund under section 6015.  Sec. 6015(g)(1).  Thus, refunds under section 6015(f) are not available if not timely under section 6511.  Washington v. Commissioner, supra at 159-160.

To reflect the foregoing,

Decision will be entered for respondent.