# United States Court of Appeals for the Federal Circuit

---

**VENSURE HR, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1640

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00728-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: October 4, 2024

---

RIC HULSHOFF, Ric Hulshoff Attorney at Law, PLLC, Henderson, NV, argued for plaintiff-appellant. Also represented by JASON M. SILVER, Silver Law, PLC, Scottsdale, AZ.

ISAAC B. ROSENBERG, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRUCE R. ELLISEN, DAVID A. HUBBERT.

---

Before PROST, CLEVENGER, and CHEN, *Circuit Judges*.

PROST, *Circuit Judge*.

Vensure HR, Inc. ("Vensure") appeals the final judgment of the U.S. Court of Federal Claims dismissing Vensure's complaint for failing to state a claim upon which relief could be granted. *Vensure HR, Inc. v. United States*, 164 Fed. Cl. 276 (2023) ("*Decision*").

This case involves the procedural mechanisms for filing a tax refund for penalties under the Internal Revenue Code. Vensure filed certain tax-penalty-refund claims, which the Internal Revenue Service ("IRS") denied on their merits. Then, when Vensure filed a complaint in the Court of Federal Claims, the IRS sought to dismiss the complaint based on a procedural flaw with Vensure's claims—namely, that Vensure had failed to "attach" a power of attorney to those claims. Despite having already filed two powers of attorney that potentially covered these tax claims, the Court of Federal Claims dismissed Vensure's case on the sole basis that a power of attorney was not "attached" to the claims at the time of filing. The question before us is whether the regulation that requires a power of attorney to "accompany" a claim is an explicit statutory requirement, which cannot be waived, or is purely regulatory in nature and thus waivable. We conclude that 26 C.F.R. § 301.6402-2(e)'s requirement that "a power of attorney must accompany the claim" is regulatory and not statutory. Therefore, this requirement may be waived by the IRS in certain circumstances. In other words, while the IRS may demand strict compliance with its regulations, when it fails to do so, and instead addresses a claim on its merits, the requirement may be waived. For the reasons below, we vacate and remand for further proceedings.

## BACKGROUND

### I

Vensure is a professional-employer organization that provides other companies with services to outsource

employee-management tasks, including payroll and tax reporting services. As part of the tax reporting services, Vensure withholds, reports, and pays employment-related taxes on behalf of companies to the IRS.

In the second quarter of 2014, Vensure reported and paid employment taxes. Believing those payments to be an overpayment of more than $3.7 million, Vensure filed tax refund claims with the IRS in October 2014 and June 2015.[1] App'x 61.[2] Vensure alleges that these overpayments "led to Vensure's inability to timely pay" taxes for later periods. App'x 62. As a result of the belated payments, the IRS assessed tax penalties amounting to more than $1.5 million. App'x 47.

Vensure fully paid the belated tax payments and penalties but sought a refund or abatement of the tax penalties through the filing of six IRS Forms 843 in March 2016. App'x 34–39 (collectively, the "penalty-refund claims"). When a Form 843 is filed by a corporation, like Vensure, the form must generally be signed by "a corporate officer authorized to sign." *E.g.*, App'x 34. But the IRS "Instructions for Form 843" also allow an authorized representative to sign and file Form 843 on behalf of the taxpayer. Here, each of the Forms 843 was signed by Chris J. Sheldon, an attorney representing Vensure in the preparation of various tax forms.

When a legal representative signs a tax form on behalf of a taxpayer, a power of attorney must grant the legal representative authority to execute the claims. Form 2848 may be used to grant a power of attorney "to authorize an individual to represent you before the IRS." App'x 158.

---

[1] The IRS granted a refund of approximately $750,000 in overpayments. App'x 50.

[2] "App'x" refers to the appendix filed by Vensure (ECF No. 13).

Specifically, the instructions to Form 843 state: "If [the taxpayer's] authorized representative files Form 843, the original or copy of Form 2848, Power of Attorney and Declaration of Representative, must be attached." S.App'x 2.[3]  It is undisputed here that Vensure did not concurrently attach a Form 2848 to any of the six penalty-refund claims at the time of filing.  There were, however, at least three Forms 2848 filed with the IRS at various points in time that purport to give Mr. Sheldon power of attorney over Vensure's penalty-refund claims.  Vensure identifies two Forms 2848 executed in 2015 and faxed to the IRS's Centralized Authorization File ("CAF") unit.[4]  And, in 2017, Vensure sent the IRS a formal protest for the disallowance of the penalty-refund claims and attached a power of attorney, confirming that Silver Law, where Mr. Sheldon was employed, represents Vensure for the tax periods and penalties at issue here.  *See* S.App'x 15.

In 2018, the IRS denied Vensure's penalty-refund claims because Vensure had not met a "reasonable cause" exception to avoid the penalties.  App'x 40–46; App'x 48; App'x 64.  In denying these claims, the IRS sent its decision letters to Mr. Sheldon "under the provisions of your power of attorney or other authorization we have on file." App'x 40; App'x 43.

## II

After pursuing administrative remedies at the IRS, Vensure filed a complaint in the Court of Federal Claims in June 2020, seeking a refund of the penalties imposed

---

[3]    "S.App'x" refers to the supplemental appendix filed by the government (ECF No. 21).

[4]    "The CAF is a computerized system of records which houses authorization information from both powers of attorney and tax information authorizations." Appellee's Br. 29 (cleaned up).

and collected by the IRS. App'x 47. In response, the government, as defendant, filed a series of motions to dismiss: the first two were denied without prejudice, but the third motion, at issue here, was granted. In this third and final motion, the government moved to dismiss Vensure's complaint under Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC") for lack of subject-matter jurisdiction because Vensure's penalty-refund claims were not "duly filed" under 26 U.S.C. § 7422(a). *See* App'x 83–85. The government asserted that there were two "flaws" with Vensure's claims: (1) Vensure had not signed and verified the claims under 26 U.S.C. §§ 6061(a) and 6065, and (2) Vensure had not attached a power of attorney to the Forms 843 for refund that would permit Mr. Sheldon to sign those forms and properly submit the claims. Appellee's Br. 11. Vensure's response argued, among other things, that *Brown v. United States*, 22 F.4th 1008 (Fed. Cir. 2022), confirmed that § 7422(a) is non-jurisdictional and that Vensure "substantially complied" with the power of attorney requirement with the filing of its previous Forms 2848. *Decision*, 164 Fed. Cl. at 285.

The Court of Federal Claims agreed with Vensure that § 7422(a) is non-jurisdictional but "convert[ed] defendant's jurisdictional motion into a motion to dismiss pursuant to RCFC 12(b)(6)." *Id.* at 284. Then, relying on § 7422(a), 26 C.F.R. § 301.6402-2(e), *Brown*, and various IRS instructions, the Court of Federal Claims determined that Vensure had "failed to 'duly file' its refund claims" because "a valid power of attorney must be submitted together with a refund claim" and Vensure "failed to attach to its refund claims any power of attorney forms." *Id.* at 286–87. The Court of Federal Claims further determined that this attachment requirement is statutory and thus cannot be waived. *Id.* at 288. The Court of Federal Claims then granted the government's motion to dismiss.

Vensure timely appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review de novo whether the Court of Federal Claims properly dismissed a complaint for failure to state a claim. *See Dixon v. United States*, 67 F.4th 1156, 1165 (Fed. Cir. 2023).

Vensure raises three issues on appeal: (1) whether 26 C.F.R. § 301.6402-2(e)'s requirement that "a power of attorney must accompany the claim" (i.e., the "accompany" requirement) means a power of attorney must be *attached* to the claim for refund; (2) whether § 301.6402-2(e)'s use of "accompany" is a statutory, non-waivable requirement or is regulatory and thus waivable; and (3) whether the IRS waived the "accompany" requirement of § 301.6402-2(e) here.

The parties each provide their own definitions of "accompany" within the context of § 301.6402-2(e). Vensure argues that "accompany" means "relevant," "on file and . . . existing at the time, valid, and sufficient to authorize the signing of the . . . Form 843." Oral Arg. at 1:34–49.[5] The government argues that "accompany" means "attach." *E.g.*, Appellee's Br. 20. But we need not construe "accompany" to resolve this dispute. Instead, we first address Vensure's second issue and conclude that § 301.6402-2(e)'s "accompany" requirement is regulatory and waivable. We then provide guidance to the Court of Federal Claims to determine on remand whether the IRS waived the "accompany" requirement of § 301.6402-2(e) here.

I

The Supreme Court has distinguished between "explicit statutory requirements" and "detailed administrative regulations" governing tax refund procedures. *Angelus*

---

[5]    No. 23-1640, https://oralarguments.cafc.uscourts. gov/default.aspx?fl=23-1640_07092024.mp3.

*Milling Co. v. Comm'r*, 325 U.S. 293, 296 (1945). "Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of Treasury officials." *Id.* In contrast, where a requirement is regulatory in nature, the Commissioner of the IRS may "insist upon full compliance with his regulations," or those requirements may, under certain circumstances, be waived. *Id.* "The basis of this claim of waiver is that the Commissioner through his agents dispensed with the formal requirements of a claim by investigating its merits." *Id.*

In *Angelus Milling*, the Supreme Court drew a clear distinction between "explicit statutory requirements" contained in statutes enacted by Congress concerning the collection of taxes and "[t]he effective administration of these modern complicated revenue measures [which] inescapably leads Congress to authorize detailed administrative regulations by the Commissioner of Internal Revenue." *Id.* The Supreme Court further emphasized that "Congress has given the Treasury this rule-making power for self-protection and not for self-imprisonment," and "[i]f the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness." *Id.* at 297. None of the multiple items of necessary factual information required by the applicable regulations were submitted by the taxpayer in *Angelus Milling*—only the name and address of the joint claimants and a statement of the dates and amounts of the tax payments made by one of the joint claimants. *Id.* at 294 n.2. The specific informational requirements set forth in the multiple regulations involved in *Angelus Milling* were deemed by the Supreme Court to be regulatory in nature, subject to waiver by the

Commissioner, and not statutory commands beyond the Commissioner's discretion to waive.

To determine whether the "accompany" requirement of § 301.6402-2(e) is statutory or regulatory, and thus whether it is waivable, we begin with a review of the relevant statutes and articulate the scope of the "explicit statutory requirements" relevant in this case. We then turn to the "accompany" requirement of § 301.6402-2(e) and conclude that it is a purely regulatory requirement. Finally, we explain why the government's interpretation of *Brown*—to require strict compliance with all signature and verification regulations—is so broad as to conflict with the Supreme Court's guidance in *Angelus Milling*.

## A

We begin with the relevant statutory provisions governing the filing of returns and actions for refunds. The parties, and the Court of Federal Claims, cited three.

Section 7422(a), which provides the statutory cause of action for a tax refund suit in the Court of Federal Claims, states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed* with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added). Section 6061(a) states: "Except as otherwise provided . . . any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations *shall*

*be signed in accordance with forms or regulations pre-scribed by the Secretary.*" *Id.* § 6061(a) (emphasis added). And § 6065 states: "Except as otherwise provided by the Secretary, any return, declaration, statement, or other doc-ument required to be made under any provision of the in-ternal revenue laws or regulations *shall contain or be verified by a written declaration* that it is made under the penalties of perjury." *Id.* § 6065 (emphasis added).

In *Brown*, we concluded that these provisions "impose a default rule that individual taxpayers must personally sign and verify their income tax refund claims." 22 F.4th at 1012. In light of these statutes and applicable imple-menting regulations, we also concluded that taxpayers may authorize a legal representative to certify the claims and provide a valid power of attorney in place of the taxpayer signature requirement. *See id.* at 1013. *Brown* refers to these requirements as the "taxpayer signature and verifi-cation requirements." *Id.* "Because the taxpayer signature and verification requirements derive from statute, the IRS cannot waive those requirements." *Id.* Notably, however, these statutory provisions do not explain *when, where*, or *how* a taxpayer (or a taxpayer's authorized representative) should comply with these requirements.

## B

We next look to whether the "accompany" requirement of § 301.6402-2(e)—i.e., the requirement that "a power of attorney must accompany the claim"—is statutory or regu-latory in nature. We conclude that it is a purely regulatory requirement that is not reflected in the language of the rel-evant statutory provisions. We then explain why we find the government's counterarguments unpersuasive.

## 1

The "accompany" requirement at issue presents a reg-ulatory question of *when, where*, and *how* to file a power of attorney—not whether one is required to be provided in

lieu of a taxpayer's signature in the first place. While *Brown* explained that the latter question is statutory, it did not address the former. Because, as explained below, the statutory provisions do not speak to the *when*, *where*, and *how* of filing a power of attorney, we conclude that the "accompany" requirement is regulatory and thus waivable.

We are unaware of any relevant statutory provision that establishes requirements for *when*, *where*, and *how* to file a power of attorney with the IRS. Nothing in the statutory provisions requires a specific mode of attachment or use of a specific electronic filing system like CAF. Nothing in the statutory provisions indicates that satisfaction of the "signature and verification requirement" must be completed one way for tax returns and another way for tax refund claims. And nothing in the regulatory text suggests that the "accompany" requirement echoes the statutory requirements, as was the case in *Brown*. *See* 22 F.4th at 1013. Instead, the statutory provisions reflect a single signature and verification requirement—i.e., that the tax forms must be signed and verified by the taxpayer or a person with power of attorney.

Rather than appearing in a statutory provision, the requirements for *when*, *where*, and *how* a power of attorney may accompany a claim are grounded in sub-regulatory IRS instructions and publications. For example, § 301.6042-2(e) requires that claims for credits or refund must be accompanied by a power of attorney, but it never defines "accompany." The relevant instructions for filing a tax refund (using Form 843) states that "Form 2848, Power of Attorney and Declaration of Representative, must be attached." S.App'x 2. Another provision addressing individual tax returns, 26 C.F.R. § 1.6012-1(a)(5), also requires that the returns be "accompanied by a power of attorney." But it likewise never defines "accompany," and the relevant instructions state, "[i]f your return is signed by a representative for you, you must have a power of attorney attached . . . ." *1040 (and 1040-SR) Instructions* (2023),

https://www.irs.gov/pub/irs-pdf/i1040gi.pdf. Both sets of instructions suggest attachment is necessary, but they do not define *how* a Form 2848 must be attached.

Indeed, the IRS admits that physical attachment or concurrent attachment of Form 2848 is not necessary for both tax returns and tax refund claims, despite both regulations' "accompany" requirement. Recall that the CAF system "contain[s] information regarding the authority of individuals appointed under powers of attorney." App'x 161. "Generally, the IRS records powers of attorney on the CAF system." App'x 161. But there are certain one-time or specific-issue powers of attorney that the IRS does not record on CAF. App'x 161. One such specific use is Form 843 (again, the form at issue in this case). App'x 161. According to the government, taxpayers *may* use CAF to record Form 2848 for Form 1040 and satisfy the "accompany" requirement but *may not* use CAF for recording Form 2848 for Form 843 to satisfy the "accompany" requirement. Oral Arg. at 23:37–24:25; *see also id.* at 29:16–30:08. Thus, despite both regulations requiring a power of attorney to "accompany" the claims and both instructions suggesting that attachment is necessary, the IRS procedures require physical or concurrent attachment for Form 843 but not Form 1040. In other words, according to the IRS, "accompany" in one circumstance means only physical, concurrent submission, while "accompany" in a separate circumstance means either physical, concurrent submission or uploading to CAF. This example highlights that the IRS has created procedures to answer the *when, where,* and *how* question derived from IRS instructions, publications, and limitations of CAF—not an explicit statutory demand. *See id.* at 32:48–33:09. And the inconsistent implementation of the *when, where,* and *how* of filing a power of attorney is not reflected in the statutory language.

Thus, beyond the statutory requirement to supply a power of attorney when the taxpayer is not signing a tax

form (as discussed in *Brown*), the remainder of the "accompany" requirement regarding *when*, *where*, and *how* a taxpayer files a power of attorney is a "detailed administrative regulation[]," rather than an explicit statutory mandate. *See Angelus Milling*, 325 U.S. at 296. Therefore, when the IRS fails to apply this regulatory requirement in responding to a claim for refund, and instead addresses a claim on its merits, the "accompany" requirement may be waived.

2

The government's insistence that "accompany" is statutory in nature is undermined by what appears to be design choices between the filing requirements of different tax forms and a failure to connect these choices to an explicit statutory requirement.

For example, the government argues that "CAF could not have substituted for a Form 2848 that was physically attached to Vensure's refund claims" essentially because "[n]ot all authorizations can be recorded in the CAF. . . . CAF does not track authorizations for refund claims filed on Form 843." Appellee's Br. 28, 30. While the IRS may have its purposes for designing such a system, its basis for determining when physical attachment is required and when it is not (e.g., when its system cannot and can record the authorization) is unconnected to an "explicit statutory requirement[]." *Angelus Milling*, 325 U.S. at 296.

Additionally, when asked at oral argument why a CAF filing satisfies the "accompany" requirement for a Form 1040, the government's response almost entirely relied on (1) how to properly execute a Form 2848, and (2) the CAF system's ability to track authorizations. *See* Oral Arg. at 30:13–47. But when asked why a CAF filing would *not* satisfy the "accompany" requirement for a Form 843, the government responded that (1) the actual power of attorney form would be offsite or destroyed and (2) "CAF doesn't track authorizations for Form 843." *Id.* at 30:47–31:59. When asked why there was a difference in treatment

between Forms 1040 and Forms 843, the government responded that it is because Form 2848 has specific fields that, if properly filled out, would be coded into CAF for a Form 1040 but not a Form 843. *See id.* at 31:58–32:48. The government's attempt at a basis for such a distinction—that it is a "function of volume" of each type of claim filed—also has no grounding in an explicit statutory requirement. *See id.* at 35:10–30.

At bottom, the IRS's prerogative to design systems and processes that suit its needs does not transform regulations into statutory provisions.

C

Our conclusion here is not contrary to *Brown*. The government places significant weight on *Brown*'s statement that "a taxpayer must satisfy the statutory default rule or else comply strictly with the implementing regulations." Appellee's Br. 19 (quoting *Brown*, 22 F.4th at 1013). While we recognize that this sentence, standing alone, may appear to elevate to statutory status every IRS regulation addressing signature and verification requirements, we do not agree such a broad interpretation of this single sentence is appropriate. To agree with such an interpretation would place *Brown* in conflict with the Supreme Court's decision in *Angelus Milling*.

As has been discussed throughout this opinion, *Angelus Milling* distinguished between "explicit statutory requirements" and "detailed administrative regulations." 325 U.S. at 296. To wholesale interpret all regulations associated with signature and verification as statutory would disregard this distinction and elevate all regulations on this subject matter to a statutory requirement. The statutory text here simply cannot support that treatment.

Additionally, the issue in *Brown* was different from the issue before us. In *Brown*, there was no discussion of the regulation at issue here, merely a single citation to

14                                    VENSURE HR, INC. v. US

§ 301.6402-2(e).  22 F.4th at 1013.  Further, the facts there
were wholly different because "[t]he Browns admit[ted]
that they neither signed their refund claims nor tendered
powers of attorney to permit their tax preparer to sign the
claims on their behalf."  *Id.* at 1012.[6]  And *Brown* stated
that it dealt "[t]here only with the facts presented to us,
relating to a return that is both unsigned by the taxpayers
and not accompanied by a power of attorney."  *Id.* at 1013.
In *Brown*, "not accompanied" meant a total absence of a
power of attorney.[7]  *Id.* at 1012–13.  That is different from
the circumstances here where Vensure filed multiple pow-
ers of attorney purporting to cover the penalty-refund
claims at issue through its two Forms 2848 filed in 2015.
Thus, *Brown*'s instruction to "satisfy the statutory default
rule or else comply strictly with the implementing regula-
tions" was limited to the requirement to supply a valid
power of attorney, not *when*, *where*, and *how* to file one.

---

[6]   The government notes that there was a power of
attorney filed in *Brown*.  Appellee's Br. 22.  But that was
not a valid power of attorney because it was signed by the
person being granted the power of attorney, not the tax-
payer—i.e., the person assigning the power of attorney was
the person being granted the power of attorney.  *Brown v.
United States*, 151 Fed. Cl. 530, 532 (2020).  Nowhere had
the taxpayer authorized a legal representative to file the
claims on the taxpayer's behalf.  Therefore, in *Brown*, the
taxpayers conceded that they had no valid power of attor-
ney.

[7]   The government disagrees that *Brown*'s use of "ac-
companied" was so narrow, at least in part because the
opinion also includes suggestions of "append[ing]" or "at-
tach[ing]" a power of attorney to the claims.  *See* 22 F.4th
at 1010, 1012.  But these passing references are merely
dicta.

## II

Having determined that the "accompany" requirement is regulatory, two fact-based questions remain: (1) whether Vensure's powers of attorney as filed are sufficient to authorize an agent to execute its penalty-refund claims and (2) whether the IRS waived the "accompany" requirement in this case. We remand these questions of fact to the Court of Federal Claims to determine in the first instance.

## A

The government raises a question as to whether the powers of attorney at issue indeed cover the proper scope of representation due to purported defects with the Forms 2848. On remand, the government can raise these alleged defects with the Court of Federal Claims (subject to that court's view of whether the arguments have been adequately preserved). To the extent that any alleged defects are directed only to the *when*, *where*, and *how* of filing a power of attorney, such defects likely would not demonstrate an unmet statutory requirement and, instead, would implicate only regulatory requirements or sub-regulatory instructions. But to the extent the defects are such that Vensure has failed outright to grant Mr. Sheldon authority to represent it before the IRS to execute the penalty-refund claims at issue, then no valid power of attorney exists and Vensure is, like the Browns, left in violation of the signature and verification requirements necessary to "duly filed" a claim under § 7422(a). *See Brown*, 22 F.4th at 1013.

## B

Assuming a valid power of attorney was filed with the IRS to cover the scope of representation for the penalty-refund claims, then the Court of Federal Claims must determine whether the "accompany" requirement was in fact waived here. When the IRS "dispense[s] with the formal requirements of a claim by investigating its merits," regulatory requirements may be waived. *Angelus Milling*, 325

U.S. at 296; *see also id.* at 297 ("If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it.").

*Angelus Milling*'s waiver doctrine applies when "(1) there is clear evidence that the Commissioner understood the claim that was made, even though there was a departure in form in the submission, (2) it is unmistakable that the Commissioner dispensed with the formal requirements and examined the claim, and (3) the Commissioner took action upon the claim." *Brown*, 22 F.4th at 1013 (citing *Angelus Milling*, 325 U.S. at 297–98). This three-part test contains underlying factual questions, which we will not undertake for the first time on appellate review. We leave to the Court of Federal Claims to decide this issue (if necessary) on remand.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we vacate the Court of Federal Claims' prior determination that Vensure's claims were not "duly filed" under § 7422(a) and remand for further proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

No costs.