The **PROCTER & GAMBLE COMPANY, et al.,**
Plaintiffs,

v.

**UNITED STATES of America,**
Defendant.

No. 1:05–cv–00355.

United States District Court,
S.D. Ohio,
Western Division.

June 23, 2008.

Daniel H. Schlueter, Sutherland, Asbill & Brennan LLP, Atlanta, GA, Mariana T. Acevedo, Victoria A. O'Connor, Kent L. Jones, Sutherland, Asbill & Brennan LLP, Washington, DC, Mark Alan Vanderlaan, Dinsmore & Shohl, Cincinnati, OH, for Plaintiffs.

Glenn J. Melcher, Barry Reiferson, Brian Richard Harris, James O'Leary, Nathaniel J. Dorfman, U.S. Department of Justice, Washington, DC, for Defendant.

### OPINION AND ORDER

MICHAEL H. WATSON, District Judge.

Plaintiffs in this action, Procter & Gamble Company ("P & G") and Proctor & Gamble FSC ("P & G FSC")(collectively, "plaintiffs"), seek a refund of taxes paid pursuant to assessments by the government. One of the assessments concerned the FSC Advance Payment Transaction. At the administrative level, the government defended the assessment on the ground that plaintiffs' calculation of Combined Taxable Income ("CTI") resulted in a material distortion of income. In the present lawsuit, the parties filed cross-motions for summary judgment on the Advance Payment Transaction issue. In its summary judgment papers, the government presented three defenses to plaintiffs' refund claim: (1) plaintiffs' calculation of CTI violated the Administrative Pricing Rules; (2) plaintiffs' calculation of CTI resulted in a material distortion of income; and (3) the Advance Payment transaction lacked economic substance. On September 17, 2007, the Court issued an opinion and order granting the government's motion for partial summary judgment and denying plaintiffs' motion for partial summary judgment, holding that plaintiffs' calculation of CTI violated the Administrative Pricing Rules. The Court did not reach the governments' other two defense theories. This matter is before the Court on plaintiffs' motion to clarify and modify the Court's September 17, 2007 opinion and order (Doc. 137).

Plaintiffs' motion is two-pronged. First, plaintiffs seek a refund on the FSC Advance Payment because the taxes thereon should be calculated according to the gross receipts method of determining combined taxable income ("CTI") rather than the "arm's-length" pricing method of I.R.C. § 482. Second, plaintiffs ask the Court to order the parties to jointly calculate the refund and submit a proposed final judgment entry to the Court. The government agreed with the second prong of plaintiffs' motion, and the Court granted that part of plaintiffs' motion on October 5, 2007 (Doc. 140).

In addition, on October 1, 2007, plaintiffs moved for reconsideration of the Court's September 17, 2007 opinion and order (Doc. 138). The Court denied plaintiffs' motion for reconsideration in an order issued on April 10, 2008 (Doc. 147). The only issue remaining in this case is, therefore, whether plaintiffs should be afforded the benefit of a calculation of the CTI according to the gross receipts method, and the resulting deductions.

Plaintiffs have submitted their calculation of income and costs for tax year 2000 applying the gross receipts method. Under this treatment, P & G would be permitted to deduct costs of $362,066,663 for 2000. The government does not argue that plaintiffs' calculation is incorrect. Rather, the government contends the doctrine of variance bars P & G from asserting the gross receipts method and resulting deductions because P & G failed to raise the issue in its administrative claim for refund. The Court must therefore determine whether plaintiffs' motion must be denied under the variance doctrine.

The United States is a sovereign and consequently may not be sued without its consent. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); *Carione v. United States,* 291 F.Supp.2d 141, 145 (2003). As a result, actions against the United States must conform to the requirements of the statute by which Congress has consented to suits against the United States. *Carione,* 291

F.Supp.2d at 145; *see also Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). The applicable statute in this case is I.R.C. § 7422(a), which provides in relevant part:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed ... until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

26 U.S.C. § 7422(a). The Treasury Regulations provide, "[t]he claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1). These prerequisites serve three purposes: (1) they prevent surprise and ensure adequate notice to the government; (2) they provide the government an opportunity to correct mistakes at the administrative level; and (3) they limit the scope of refund litigation. Gerald A. Kafka, Rita A. Cavanagh, *Litigation of Federal Civil Tax Controversies* ¶ 16.02[1] (RIA 2008). Application of the requirements has given rise to the "doctrine of variance" which provides " 'a ground for a refund that is neither specifically raised by a timely claim for refund, nor comprised within the general language of the claim, cannot be considered by a court in a subsequent suit for a refund.'" *Mobil Corp. v. United States,* 52 Fed.Cl. 327, 331 (2002)(quoting *Ottawa Silica Co. v. United States,* 699 F.2d 1124, 1138 (Fed.Cir.1983)). The rule applies to both the factual and legal bases of a claim for refund, *Id.* Courts lack jurisdiction to consider grounds for a tax refund which were not specifically set forth in the claim for refund. *Estate of Bird v. United States,* 534 F.2d 1214, 1219 (6th Cir.1976).

Plaintiffs advance two arguments against the application of the variance doctrine. Plaintiffs initially contend the doctrine of variance is not applicable where, as here, the government prevails on a new theory not asserted during the administrative process. In addition, plaintiffs aver that P & G FSC did, in fact, specifically present the gross receipt method in its refund claim.

There are two situations in which the government can waive the variance doctrine. First, the government can waive the variance doctrine if it dispenses with the formal requirements and investigates the merits of a claim that was not listed in the taxpayer's refund claim. *Angelus Milling Co. v. C.I.R.,* 325 U.S. 293, 296, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945). Second, the government can waive the variance doctrine when it brings a new defense in litigation which was not asserted at the administrative level. *Brown v. United States,* 427 F.2d 57, 62 (9th Cir.1970). When the government changes its litigating position from the administrative level to the trial level and injects a new issue into the case it would be unfair for the taxpayer not to be allowed to respond to that issue. *Id.* This type of waiver also requires that the taxpayer was not able to anticipate the new defense being raised. *Bowles v. United States,* 820 F.2d 647, 649 (4th Cir.1987). Plaintiffs assert the second variety of waiver.

*Bowles* is instructive. In *Bowles,* the taxpayers worked for an airline and maintained an apartment in New York City near the airport. The taxpayers also had a residence in Charlottesville, Virginia where they operated a vineyard and a winery. The taxpayers considered New York to be their home for tax purposes and the Charlottesville winery as a trade or business. For this reason, the taxpayers deducted transportation expenses be-

tween New York City and Charlottesville, as well as meals and lodging expenses they incurred while in Charlottesville. Following an audit, the government disallowed the deductions. The government denied the taxpayers' refund claim, and the taxpayers then filed a refund lawsuit in federal district court.

In their complaint, the taxpayers asserted they were permitted to deduct their travel, meal and lodging costs as legitimate business expenses. The government maintained, as it had at the administrative level, that the costs were not business expenses, but were incurred incident to the taxpayers' personal family life.

Three weeks before trial, the government changed its position, and asserted an entirely new argument: the taxpayers could not establish they maintained a home in New York City. Then, on the first day of trial, the government conceded the taxpayers' winery constituted a business, but argued the taxpayers' home was in Charlottesville. The district court agreed and entered judgment in favor of the government.

Since the case had been placed in a different posture as a result of the government's new argument, the district court reinstated the case and ordered the parties to discuss the taxpayers' liability if Charlottesville was deemed their tax home. The government, however, argued the district court was without jurisdiction to reinstate the case because the taxpayers had not claimed Charlottesville was their home at the administrative level. Once again the district court agreed with the government and dismissed the case.

On appeal, the taxpayers argued that by drastically changing its legal position at trial, the government waived its right to object to their claims for deductions based on the district court's conclusion that Charlottesville was the taxpayers' residence. The court of appeals agreed, quoting *Brown* as follows:

> It would be unfair to allow the Government to assert a new defense to a taxpayer's claim ·at pretrial and simultaneously to prevent the taxpayer from making·appropriate responses to it, because the taxpayer had not previously anticipated the defense. The administration of the revenue system would not be enhanced by encouraging taxpayers to baloon [sic] their refund claims in attempts to anticipate every conceivable Government defense.

*Bowles,* 820 F.2d at 649 (quoting *Brown,* 427 F.2d at 62). Applying these principles, the appellate court in *Bowles* reversed the judgment of the district court and remanded the case for further proceedings. *Id.* at 650.

Here, the Court granted summary judgment in favor of the government based upon a finding that plaintiffs' calculation of CTI violated the Administrative Pricing Rules. Plaintiffs argue the government waived the variance doctrine defense because it failed to present its Administrative Pricing Rules argument at the administrative level. Plaintiffs contend that, at the administrative level, the government instead relied solely on its "material distortion" theory.

The government does not dispute that the variance doctrine allows taxpayers to respond to new issues raised by the government in a refund lawsuit. Nor does the government expressly argue it fairly asserted at the administrative level its argument that plaintiffs' calculation of CTI violated the Administrative Pricing Rules.[1]

---

1. The Court notes the government alluded to the *"total* costs" requirement of 26 C.F.R. § 1.925(a)-IT(c)(6) when it explained its material distortion position at the administrative level (emphasis in original). *See* Form 886–A at 7 (attached to plaintiffs' motion to clarify

Nonetheless, the government contends P & G's claim for an additional $362 million of deductions for the 2000 tax period is not made *in response to* the government's Administrative Pricing Rules argument or any other issue the government has raised in this case. Specifically, the government asserts the deductions P & G seeks in plaintiffs' motion to clarify and modify do not pertain to the specific argument upon which the government prevailed. Plaintiffs maintain their gross receipts position flows directly from, and is asserted in response to, the government's argument that plaintiffs improperly calculated CTI.

The Court finds merit in the government's position. Plaintiffs' request for deductions is not so much in response to the particular theory upon which the government prevailed as it is in response to the fact that the government prevailed at all. Nevertheless, the Court rejects plaintiffs' waiver argument on slightly different grounds.

■ Both the theory upon which the government prevailed and its material distortion theory challenge plaintiffs' failure to take total costs into account in calculating CTI. As plaintiffs recognized, the overarching concept for both theories is the matching of costs and income. Indeed, in response to both theories plaintiffs argued the "matching" or "synchronizing" of expenses and income advocated by the government was precluded by the annual accounting principles embodied in I.R.C. §§ 451 and 461. Hence, the government's arguments represent two sides of the same "matching" coin, and the upshot of both theories is identical: plaintiffs' CTI calculation should have accounted for the total costs of the Advance Payment Transaction.

The logical alternative response to either legal theory, or, more importantly, to the matching principle both theories share, would be to request deductions for expenses incurred in the same year income was received in the event the government prevailed. Indeed, there is no reason to believe plaintiffs would not have sought the same deductions they now seek had the government prevailed on its material distortion theory. Thus, plaintiffs should have anticipated the need to assert the subject deductions at the administrative level in response to the government's material distortion argument, even in the absence of the government's "new" argument that plaintiffs misapplied the Administrative Pricing Rules in calculating CTI.

In this sense, the instant case does not remotely involve the unanticipated "drastic change" of position by the government at issue in *Bowles*. In contrast to *Bowles*, the government in the case at bar did not completely withdraw its principal material distortion argument and replace it with an entirely unrelated theory. Rather, the government in the present case advanced a more completely developed version of a principle it did, in fact, allude to at the administrative level, and which represents another variation of the same "matching" theory.

In addition, the Court has never rejected the government's material distortion argument; rather, the Court simply did not reach it. If this case is remanded, it is entirely possible the government could ultimately prevail on its material distortion theory.

In sum, the Court finds plaintiffs were not unfairly surprised by the government's "new" argument, and should have anticipated the need to assert the deductions at the administrative level in response to the government's material distortion theory.

and modify as Exhibit 1). The total costs requirement was a key component of the government's "new" argument in the instant lawsuit.

For all of these reasons, the Court rejects plaintiffs' waiver argument.

Plaintiffs also argue that notwithstanding the variance doctrine, P & G FSC did, in fact, present the gross receipts alternative in its claim for refund. The government does not dispute this assertion; rather, the government points out that P & G and P & G FSC are separate taxpayers which file separate tax returns, report separate items of income and deduction, and make separate refund claims.

Plaintiffs cite no authority for the proposition that the inclusion of a ground for refund in one taxpayer's refund claim suffices to put the government on notice that a related entity is asserting the same ground for a refund. There is no legal basis for allowing P & G to ride on the coattails of P & G FSC to discharge P & G's duty to "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1). Having found the government did not waive its variance doctrine defense, the Court holds it is without jurisdiction to consider P & G's request for deductions.

For the above reasons, the Court **DENIES** the remaining portion of plaintiffs' motion to clarify and modify (Doc. 137) to the extent plaintiffs request that P & G be permitted to deduct costs of $362,066,663 for 2000. The parties shall jointly calculate the refund and submit a proposed final judgment entry to the Court within sixty days after the date of this order.

**IT IS SO ORDERED.**