**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LORRAINE K. LINTON; JOHN R.
LINTON,

     Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent - Appellee.

No. 18-9004
(CIR No. 15904-15)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Taxpayers Lorraine K. Linton and John R. Linton (the Lintons), proceeding

pro se, appeal from the United States Tax Court's order granting partial summary

judgment in favor of the Commissioner in a Collections Due Process (CDP)

proceeding involving their unpaid 2010 tax liability and sustaining the

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Commissioner's notice of deficiency with respect to their 2009 and 2010 taxes. Exercising jurisdiction under 26 U.S.C. § 7482(a)(1), we affirm.

## Background

This appeal involves two separate Internal Revenue Service (IRS) proceedings regarding the Lintons' 2009 and 2010 tax liability: (1) a notice of determination issued by the IRS Office of Appeals following a CDP proceeding pursuant to 26 U.S.C. § 6330 concerning their self-reported but unpaid 2010 tax liability; and (2) a notice of deficiency with respect to their 2009 and 2010 tax returns. Both proceedings stem from the Lintons' tax returns for the 2007 through 2010 tax years and their practice of filing their returns late, making estimated tax payments that exceeded the amount of the tax liability they ultimately reported on the corresponding return, then electing to have that year's overpayment applied as an estimated tax payment for the subsequent year.

### 1.  The Lintons' 2007 through 2010 Tax Returns

#### a.  2007

The Lintons filed their 2007 income tax return in September 2011, reporting an overpayment credit from a prior year that resulted in a claimed overpayment in 2007 of $7,304. They requested that the $7,304 be treated as an overpayment

credit-elect—i.e., credited as an estimated tax payment toward their 2008 income tax liability.[1]

**b. 2008**

The Lintons made an estimated payment toward their 2008 tax liability on April 15, 2009, when they filed their request for a six-month extension of time to file their 2008 return. When they failed to file that return by the extended deadline, the Commissioner sent them a CP59 notice (Information About Your Tax Return). Section D of the notice stated: "If you already sent a payment, or a credit was applied to the above tax period ending [December 31, 2008], complete this section." R., ECF Vol. 2 at 229 (T.C. Doc. 14, Ex. J at 2). In July 2010, the Lintons sent the Commissioner a completed CP59 response indicating in Section D that they wanted to "[a]pply the credit" to their 2009 tax liability. However, they did not specify the amount of the credit they believed they were entitled to, and because they had not yet filed their 2009 tax return, the amount of both the credit and the tax liability they indicated they wanted the credit to be applied to were undetermined. *Id*.

The Lintons filed their 2008 tax return on November 27, 2012, reporting payments and credits totaling $20,189 and a claimed overpayment of $18,494. The reported payments/credits included the $7,304 overpayment credit-elect from the 2007 return and the $12,285 payment they made on April 15, 2009, when they

---

[1] The Form 1040 tax return gives taxpayers who pay estimated tax the choice between having overpayments refunded to them or applied to a subsequent year's estimated taxes. The latter option is referred to as an overpayment credit-elect.

requested an extension to file the return. Contrary to their request in the CP59 response that any credit they were entitled to be applied to their 2009 tax liability, the Lintons requested that the $18,494 overpayment claimed on the 2008 return be refunded to them.

### c. 2009

The Lintons' 2009 tax return, which they filed in February 2013, reported payments and credits totaling $25,085, and a claimed overpayment of $12,995. The reported payment/credits included the same $12,285 payment they had made with their 2008 extension request and the 2007 overpayment of $7,304 that they had requested in their July 2010 CP59 response be applied toward their as yet unfiled 2009 return. The Lintons requested that the $12,995 overpayment claimed on the 2009 return be applied as an estimated tax payment toward their 2010 income tax.

### d. 2010

The Lintons filed two tax returns for 2010. The first return reported payments of $12,995 (the overpayment credit-elect from the 2009 return) and a balance due of $5,823. They did not pay the balance due when they filed the return. Instead, they filed an amended 2010 return in October 2013,[2] reporting a revised tax amount of $17,235 and an additional payment of $5,823, which the IRS, at the Lintons' request, had moved from their payment account for the 2011 tax year. They claimed the additional $5,823 payment, when combined with the previously reported $12,995

---

[2] Because the Commissioner had already processed the first return, it processed the second return as a duplicate.

overpayment credit-elect from the 2009 return, resulted in payments/credits totaling $18,818, and an overpayment of $1,583 for 2010. They requested that the overpayment be applied as an estimated tax payment toward their 2011 income tax.

## 2. The Commissioner's and IRS Office of Appeals Decisions

### a. Payment Application Request in CDP Response

The IRS did not honor the Lintons' request in their July 2010 CP59 response that any credit be applied to their 2009 taxes because (1) they had not yet filed their 2008 return, so the amount of any credit they were entitled to had not yet been determined, and (2) by the time they filed the 2008 return and the amount of that credit had been determined, they had requested that they be given a refund instead of a credit toward their 2009 tax liability.

### b. 2008 Refund Request

The Commissioner disallowed the Lintons' refund request for the 2008 tax year as untimely, because they paid the amount claimed as a refund more than three years and six months before they filed the return on which they claimed the refund. *See* 26 U.S.C. § 6511(b)(2)(A) (statutory look-back rule barring recovery of income taxes paid more than three years prior to the filing of a claim for refund, plus the period of any extension granted for filing the return for the year in question). More specifically, the Commissioner determined that, because the Lintons had obtained a six-month extension to file their 2008 return, the statutory look-back period began to run on May 27, 2009—three years and six months before November 27, 2012, the date they filed the 2008 return. And, because the entire amount of the claimed 2010

5

overpayment consisted of amounts the Lintons paid <u>before</u> May 27, 2009—i.e., the 2007 overpayment and the April 15, 2009 estimated payment—the Commissioner concluded that their refund request was untimely.

### c. Effect of Denial of Payment Application and Refund Requests on Subsequent Years' Taxes

Having disallowed the $12,285 credit for 2008, the Commissioner reduced the overpayment credit-elect the Lintons claimed on their 2009 return—$12,995 to be applied to their 2010 tax—to $710. Based on that adjustment, the Commissioner reduced the total payments and credits the Lintons reported for 2010 from $18,818 to $6,553 and changed the $1,583 overpayment the Lintons claimed on their amended 2010 return to a $10,702 underpayment.

The Commissioner notified the Lintons that the IRS intended to collect the $10,702 of unpaid 2010 taxes by levy and the Lintons requested a hearing before the IRS Appeals Office. After the hearing, the Appeals Office issued a notice of determination, concluding that a levy was "no longer the appropriate action in this case" because the Lintons had agreed to a proposed monthly installment agreement. R., ECF Vol. 2 at 7 (T.C. Doc. 1, Notice of Determination, Attach. at 1). The attempts to negotiate an installment agreement failed, however, because the Lintons refused to waive their ability to assert their claim that they were entitled to apply the $12,285 payment they made for 2008 to their unpaid tax for 2010.

6

### d. Deficiency Proceeding

Separate from the issues surrounding the Lintons' 2008 return, the IRS conducted an audit of their 2009 and amended 2010 tax return. That audit resulted in the IRS sending the Lintons a notice of deficiency proposing to increase the amount of their reported 2009 and 2010 taxes.

### 3. Tax Court Decisions

The Lintons filed a petition for review in the Tax Court, challenging both the notice of determination as to the 2008 payment application decision in the CDP proceeding and the notice of deficiency for tax years 2009 and 2010. The parties entered into a stipulation of settled issues concerning the deficiencies in the taxes reported for 2009 and 2010 and the associated penalties, so the primary issue before the Tax Court was whether the Lintons had a sufficient credit from the claimed 2008 overpayment to satisfy the liabilities asserted in the notice of deficiency for 2010—i.e., whether they were entitled to apply the 2008 overpayment credit-elect to the 2010 liability through their 2009 return.

The Commissioner moved for partial summary judgment on the payment application issue, arguing that no portion of the $18,494 overpayment the Lintons claimed on their 2008 return was available to reduce their liability for 2010. The Lintons opposed the motion, contending that their CP59 response was a timely claim for credit or refund and that it created a contract that the Commissioner was obliged to honor and that entitled them to apply the $12,285 payment for 2008 to their 2010

7

tax liability. They also argued that the IRS had agreed in a January 2013 telephone conference to allow them to apply the $12,285 payment to their 2010 liability.

The Tax Court rejected the Lintons' arguments and granted the Commissioner's motion. Specifically, the court concluded that the Lintons' CP59 response did not qualify as an informal claim for credit or refund, because that response–which the court described as "premature and unspecific"–did not put the Commissioner on sufficient notice that a credit or refund was being sought. R., ECF Vol. 3 at 86 (T.C. Doc. 19 at 7). The court further found that, even if the Lintons' CP59 response constituted a claim for credit or refund, their election on their later-filed 2008 tax return to have the overpayment refunded to them superseded their CP59 response. Finally, the court held that, regardless of what the IRS representative may have said in the January 2013 telephone conference, the IRS has no authority to waive the statutory look-back limitations on credits and refunds.

At the hearing scheduled to address any remaining issues, the Lintons requested that the court revisit the summary judgment order based on the arguments they had made in their written opposition. The court declined to reconsider its summary judgment order and reiterated its conclusion that the Commissioner properly refused to apply the Lintons' payment for tax year 2008 to their 2010 tax liability. Accordingly, the court entered an order and decision sustaining the Commissioner's notice of determination regarding the CDP proceeding, finding deficiencies in the Lintons' 2009 and 2010 tax years as a result of the payment for 2008 not being applied to those years, and incorporating the terms of the parties'

stipulation of settled issues regarding the notice of deficiency. R., ECF Vol. 3 at 134

(T.C. Doc. 35).

**Discussion**

On appeal, the Lintons claim the Tax Court erred by granting summary

judgment on the payment application issue and sustaining the Commissioner's

decision in the CDP proceeding that they could not apply the overpayment

credit-elect they reported on their 2008 return to their 2010 taxes. We disagree.

"We review Tax Court decisions 'in the same manner and to the same extent as

decisions of the district courts in civil actions tried without a jury.'" *Olpin v.*

*Comm'r*, 270 F.3d 1297, 1298 (10th Cir. 2001) (quoting 26 U.S.C. § 7482(a)(1)).

Accordingly, we review the Tax Court's grant of summary judgment de novo.

*Scanlon White, Inc. v. Comm'r*, 472 F.3d 1173, 1174 (10th Cir. 2006). The Tax

Court may grant summary judgment "if the pleadings, answers to interrogatories,

depositions, admissions, and any other acceptable materials, together with the

affidavits or declarations, if any, show that there is no genuine dispute as to any

material fact and that a decision may be rendered as a matter of law." T.C. Rule

121(b); *see also* Fed. R. Civ. P. 56(a). In applying this standard, courts "view all of

the facts in the light most favorable to the non-movant and draw all reasonable

inferences from the record in favor of the non-moving party." *Young v. Dillon Cos.*,

468 F.3d 1243, 1249 (10th Cir. 2006).

As an initial matter, we reject the Lintons' contention that the Tax Court

applied the wrong standard in ruling on the summary judgment motion. The issues

9

for the Tax Court to decide were purely legal—whether the Lintons' request on their 2008 return for application of overpayments reported on that return to their 2010 tax was timely, and the legal effect, if any, of their CDP response—and there were no disputed issues of material fact for the court to resolve. The summary judgment standard requires the court to give the nonmoving party the benefit of the doubt on factual issues, not legal ones. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining, in the context of discussing the standard for ruling on motions to dismiss under Fed. R. Civ. P. 12(b)(6), that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (explaining that in deciding whether to dismiss a complaint, the court accepts the plaintiff's factual allegations as true but is "not bound by [the plaintiff's] conclusory allegations, unwarranted inferences, or legal conclusions"). Here, the court did not view the facts in a manner unfavorable to the Lintons; it simply rejected their legal arguments, including their interpretation of the legal effect of the CP59 notice and response, which, contrary to their suggestion, does not create an issue of disputed fact.

Two provisions govern the timeliness of a refund claim. *Comm'r v. Lundy*, 516 U.S. 235, 239-40 (1996). First, the taxpayer must file the claim within three years after filing his tax return or two years after paying the tax, whichever happens later. 26 U.S.C. § 6511(a). Where, as here, the claim for credit or refund is made on the return for the year the claim relates to, the claim necessarily satisfies the three-year alternative under § 6511(a), even if the return itself is untimely. *See Richards v.*

*Comm'r*, 37 F.3d 587, 590 n.7 (10th Cir. 1994).  Second, the amount of the refund is limited to the portion of the tax paid in the three years "immediately preceding the filing of the claim . . . plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A).

The Supreme Court has held that the § 6511 limitations must be strictly enforced and are not subject to court intervention on fairness grounds:

> Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote. . . .  Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities. . . . .
>
> . . . The nature and potential magnitude of the administrative problem [that would result from allowing equitable tolling] suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system.  At the least it tells us that Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires.

*United States v. Brockamp*, 519 U.S. 347, 352-53 (1997); *see also Amoco Prod. Co. v. Newton Sheep Co.*, 85 F.3d 1464, 1472 (10th Cir. 1996) (holding that statutory cap in § 6511(b)(2) on amounts recoverable in refund actions is not subject to equitable tolling).

Here, the Lintons filed their 2008 tax return on November 27, 2012, after obtaining a six-month extension of time.  Thus, the § 6511(b)(2)(A) look-back period with respect to the $18,494 overpayment they claimed on that return limits refunds or

11

credits to amounts they overpaid after May 27, 2009.  They concede that the source

of the overpayment was their 2007 overpayment and the estimated payment they

made when they filed their extension request on April 15, 2009.  And, because they

acknowledge that they made both payments before May 27, 2009, they do not dispute

that the overpayment credit-elect they claimed on their 2008 return is barred by the

look-back provision in § 6511(b)(2)(A).  Instead, they claim the Tax Court erred by

refusing to treat their July 2010 CP59 response, which they sent to the IRS within the

applicable look-back period, as either a valid claim for credit or a binding contract

between them and the IRS.[3]

The Tax Court held that the Commissioner was not required to treat the

Lintons' CP59 response as a claim for credit or refund under the applicable

regulations because it was "premature and unspecific."  R., ECF Vol. 3 at 86

(T.C. Doc. 19 at 7).  We agree.

The Treasury regulations provide that in filing a claim for credit or refund of

overpayment in response to an IRS notice or correspondence, the taxpayer must file

the claim "in accordance with the specific instructions contained in the notice or

---

[3] The Lintons also claimed that the Commissioner was bound by an IRS representative's assurance during a 2013 telephone call that they could apply the $12,285 estimated payment they made in April 2009 for 2008 to their unpaid tax for 2010.  The Tax Court rejected that claim, but they did not pursue it in this appeal. Accordingly, that claim is deemed waived and we do not address it.  *See Coleman v. B–G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

correspondence regarding the manner of filing."[4]  26 C.F.R. § 301.6402-2(a)(2).  The

regulations further provide:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.  The statement of the grounds and facts must be verified by written declaration that it is made under the penalties of perjury.  A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

26 C.F.R. § 301.6402-2(b)(1).

"The purpose of a claim for refund is to put the Commissioner on notice that a

right is being asserted with respect to an overpayment of tax . . . ."  *Newton v. United*

*States*, 163 F. Supp. 614, 618 (Ct. Cl. 1958).  Thus, the Supreme Court has held that

"a notice fairly advising the Commissioner of the nature of the taxpayer's claim,

which the Commissioner could reject because too general or because it does not

comply with formal requirements of the statute and regulations, will nevertheless be

treated as a claim where formal defects and lack of specificity have been remedied

by" the taxpayer's later amendment of the claim.  *United States v. Kales*, 314 U.S.

186, 194 (1941); *see also Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 297 (1945)

---

[4] The Lintons do not challenge the validity of Treasury Regulation § 301.6402-2, which sets out requirements for claiming a credit or refund, and we may rely on it in determining whether the Commissioner and the Tax Court correctly concluded that the Lindon's CP59 response was not a valid claim.  *See Green v. United States*, 880 F.3d 519, 532 (10th Cir. 2018) (relying on § 301.6402-2(b)(1) in determining whether the legal theory upon which the taxpayer claimed a refund constituted a substantial variance of the legal component of the refund claim it originally filed); *True v. United States*, 190 F.3d 1165, 1171-72 (10th Cir. 1999) (relying on § 301.6402-2(b)(1) in determining whether the taxpayer adequately raised an issue at the administrative level to preserve it for judicial consideration in a later suit for refund).

(explaining that the Commissioner may "dispense with his formal requirements" of the regulations governing refund or credit claims when the claimant has adequately focused the Commissioner's attention "on the merits of the particular dispute").

But to constitute an informal claim, the notice must "fairly advis[e] the Commissioner of the nature of the taxpayer's claim." *Kales*, 314 U.S. at 194; *see also Kaffenberger v. United States*, 314 F.3d 944, 954 (8th Cir. 2003) (holding that an informal claim must "put[ ] the IRS on notice that a claim is being made"). "It is not enough that in some roundabout way the facts supporting the claim may have reached him." *Angelus Milling*, 325 U.S. at 297. "The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission." *Id*. at 297-98; *see also Mobil Corp. v. United States*, 67 Fed. Cl. 708, 716 (Fed. Cl. 2005) (explaining that the "three components to an informal claim" for refund or credit are that it (1) puts the Commissioner on notice that the taxpayer is asserting a right to a refund or credit for a specific year; (2) describes the legal and factual basis for the claim; and (3) includes a written component).

We agree with the Tax Court's determination that the Commissioner correctly refused to treati the Lintons' CP59 response as a claim for refund or credit under 26 C.F.R. § 301.6402-2(b)(1), because it did not "set forth in detail each ground upon which a credit or refund is claimed" or provide "facts sufficient to apprise the Commissioner of the exact basis" of the claim. *Id*.

14

Nor was there any basis for the Commissioner to treat the CP59 response as an informal claim under *Kales* and *Angelus Milling*. Nothing in the response notified the Commissioner of the nature of their claim or described—even generally—the legal and factual basis for the claim, and the Commissioner could not have been expected to determine an overpayment of tax for 2008 based on the July 2010 CP59 response because the Lintons had not yet reported their tax liability for 2008. As explained above, the Lintons' 2008 overpayment claim was based on an overpayment credit-elect from their 2007 return, which they filed in September 2011, and an additional overpayment they claimed on their 2008 return, which they filed in November 2012—over two years after they submitted their CP59 response. Without either of those returns, the Commissioner was unable to ascertain the Lintons' 2007 and 2008 tax liabilities and determine whether there were overpayments for those tax years. To the extent the Lintons suggest the Commissioner should have treated their 2008 return as an amendment of a claim in their CP59 response, *see Kales*, 314 U.S. at 194 (permitting subsequent amendment of claim to remedy lack of specificity), we disagree because although the return resolved the lack of specificity in the CP59 response, it contradicted the CP59 response by requesting a refund, not a credit, and at that point the refund claim was untimely.

Despite the look-back limitations in § 6511 barring the Lintons' untimely request for a credit on their 2008 tax return and the Treasury regulations precluding the Commissioner from construing the CP59 response as a valid claim for credit, the Lintons maintain the CP59 response created a contract between them and the IRS that

15

the Commissioner was obliged to honor. More specifically, they argue that the CP59 form constituted an "offer" by the IRS to apply the claimed credit to a future year's tax and that their response constituted an "acceptance" of the government's offer. Aplt. Opening Br. at 5, 8-11. But the Lintons offer no legal support for the proposition that common law contract principles can be used to circumvent clear statutory or regulatory mandates, and we are aware of none. Moreover, taken to its logical conclusion, this argument would mean that any completed tax form— regardless of the accuracy and completeness of the information reported on it— creates a contract the IRS is required to honor. That is plainly not the law. Accordingly, we reject the Lintons' contract theory.

### Conclusion

We therefore affirm the Tax Court's decision.

Entered for the Court

Gregory A. Phillips
Circuit Judge

16